### A. W. WILLIAMS v. THE STATE.

No. 5615. Decided February 11, 1920.

Rehearing denied March 24, 1920.

1.—Carrying Pistol—Evidence—Res Gestae.

Where, upon trial of unlawfully carrying a pistol, the evidence showed that while an altercation was going on between two negro women, one of whom was defendant's sister, he was sitting near by in a buggy and exhibited a pistol during this fight, and that about a half an hour or three-quarter thereafter the woman worsted in said fight told her husband out

of the hearing of the defendant, yet near the scene of the difficulty, not to go back towards the defendant because he had a pistol, and that they then deflected their course, held, that this declaration was admissible as *res gestate*, and there was no reversible error; besides, the matter is not of such importance as to require a reversal of the judgment.

2.—**Same—Res Gestae—Rule Stated—Court of Criminal Appeals of Texas.**

In this State, a statement of the principles or rules upon which *res gestae* statements become admissible as an exception to the rule excluding hearsay, furnishes only in a qualified manner a guide to the appellate court in passing upon the ruling in a particular case, under our practice of considering the entire record in weighing, analyzing, and thoroughly digesting all of the evidence before applying the law of the case. Following: Lewis v. State, 29 Texas Crim. App., 202, and other cases.

3.—**Same—Rule Stated—Res Gestae—Condition of Witness—Discretion of Court.**

While *res gestae* statements must spring out of the principal fact, must tend to explain it, be voluntary and made at a time so near as to preclude the idea of deliberate design, yet a certain degree of reliance upon the discretion of the trial judge in ruling upon said statement must be observed, and considering the circumstances in the instant case we are not justified in drawing the conclusion that the mind of the witness who made the statement was not at the time in a condition so as to admit the same, and that the ruling of the trial court that this statement sprung out of the principal fact and was voluntary and spontaneous was not correct.

4.—**Same—Bill of Exceptions—Rule Stated.**

Bill of Exceptions in question and answer form should only be made when the character of the testimony cannot be reproduced otherwise.

Appeal from the County Court of Williamson. Tried below before the Hon. F. D. Love, judge.

Appeal from a conviction of unlawfully carrying a pistol; penalty, a fine of one hundred dollars.

The opinion states the case.

*Dan Moody*, for appellant.—Cited: Bradbury v. State, 2 S. W. Rep., 592; Carter v. State, 70 id., 971; Martin v. State, 82 id., 657; Deneanor v. State, 58 Texas Crim. Rep., 624, 127 S. W. Rep., 201.

*Alvin M. Owsley*, Assistant Attorney General, for the State.—Cited: Castillo v. State, 1 Texas Crim. Rep., 145, and cases cited in opinion.

MORROW, JUDGE.—The appellant was convicted of unlawfully carrying a pistol and fined $100.

Two negro women, Sallie Baldwin and Laura Sneed, engaged in a fight. The appellant was sitting in a buggy nearby, and, according to the testimony of Sallie Baldwin, Joe Baldwin, and Louis

Baldwin, the appellant exhibited a pistol during this fight. The Sneed woman, who got the best of the fight, was appellant's sister. She denied that appellant had a pistol, as did her son and the appellant. After the fight Jeff Baldwin went to a store nearby to phone for what he termed "the law." While he was there his wife Sallie Baldwin came; and he testified that she was bleeding about her nose. He said: "We stayed there twenty or thirty minutes trying to get the officers from Taylor; then started up the road towards Kuykendall's house, going there to tell about the trouble. We went up the road towards Mr. Kuykendall's house, and as soon as we left we saw the defendant Williams and Laura Sneed, sitting in the buggy at the road. Sallie told me about the fight while we were at the store. After we had gone up the road about 200 yards from the store she said 'You have not even got a pocket knife, and they have got a pistol up there.' We then got out of the road into the field."

The appellant did not hear the remark about the pistol, and insists that the reference to it under the circumstances was reversible error. The bill of exceptions is a reproduction in question and answer form of the notes of the stenographer, which we take occasion to say is a very unsatisfactory way of preparing a bill of exceptions, and should be resorted to only when the character of testimony is such that it is deemed necessary to reproduce it in this form in order to correctly present it. We gather from the bill, however, that while the fight was in progress the witness Jeff Baldwin went to the store, some 200 yards distant, to make a report of the fight to the officers at Taylor; that he was there some twenty or thirty minutes, and while there his wife arrived, the appellant and members of the Sneed family at the time remaining at the scene of the fight; that, failing to get into communication with the officers, Baldwin and his wife started in the direction of the home of a white man named Kuykendall to report the difficulty to him, and while on their way they observed that appellant and his relatives, the adversaries of the Baldwins in the fight, were at a point which would have to be passed by Baldwin and his wife in going to Mr. Kuykendall's residence, and that at this point Sallie Baldwin made the remark complained of, and acting thereon she and her husband abandoned the road and crossed the field.

It was developed that Sallie Baldwin at the store had related the incidents of the fight to her husband, but did not then mention the pistol. It is not claimed that appellant took any part in the fight further than to exhibit his pistol while it was in progress and intimate that he would use it to prevent injury to his sister, Laura Sneed.

The trial court regarded the statement as admissible as *res gestae,* and as presented we are not able to determine that it was not; but, assuming that the appellant is correct in his contention that it was

not *res gestae,* we are unable to reach the conclusion that, when taken in connection with the remainder of the record, it is of such importance as to require a reversal of the judgment. In its most hurtful aspect against the appellant it involves the statement of Sallie Baldwin to her husband, Jeff Baldwin, that they, appellant and others were in possession of a pistol. At the time this statement was made the appellant was still upon the scene of the conflict between Sallie Baldwin and Laura Sneed, where according to the State's testimony, he had exhibited the pistol. The beginning of the fight grew out of the fact that Sallie Baldwin had started to Kuykendall's residence to make a report of some controversy with the Sneed people, Laura Sneed giving her a whipping because of this intention. At the time the remark complained of was made the Baldwin woman, accompanied by her husband, was still trying to get to Kuykendall's residence, and the appellant, in company with Laura Sneed, occupied a place along the road which was between Kuykendall's place and the Baldwins. Observing him there they turned off the road, Sallie Baldwin stating at the time in effect that it would not be safe to go there because they had a pistol. She had stated in her testimony previously in positive terms that he had exhibited the pistol during the fight. Several other witnesses had given testimony to the same effect.

There are no other questions requiring consideration.

The judgment is affirmed.

*Affirmed.*

ON REHEARING.

March 24, 1920.

MORROW, JUDGE.—As a predicate for the objection to the testimony of Jeff Baldwin complained of, the appellant, in the absence of the jury, developed that at the time Sallie Baldwin made the statement about the pistol they had left the store at Rice's Crossing, and were going up the road north about 200 yards from the store. The defendant at the time was sitting in a buggy about 100 yards from the witness and Sallie Baldwin, and could not hear what she said; that the witness saw him in the buggy as soon as they left the store, and could see him all the time they were walking the 200 yards; that she did not know how long after the fight, but the witness stayed at the store twenty or thirty minutes after Sallie came. During this time efforts were being made to phone the officers; that to walk the 200 yards would require about seven or eight minutes, and that from where the fight occurred it would take about ten minutes to walk to the store, and the statement made by Sallie Baldwin was estimated to have taken place about forty-five minutes after the fight; that while at the store Sallie Baldwin told the wit-

ness about the fight, but said nothing about the pistol until they had walked 200 yards from the store in the direction of the defend-ant; that she was not excited while walking the 200 yards.

Predicated upon these facts the appellant objected to the testimony of the witness Jeff Baldwin to the effect that Sallie Baldwin said to him: "Jeff, you haven't even got a pocket-knife, and they have ·have a pistol up there." At the time this statement was made, they were about 100 yards from the appellant, and they got out of the road into the field. The witness Sallie Baldwin gave the same testi-mony, to which there was also addressed an objection, and appellant developed from her as a predicate for objection practically the same facts as are detailed above with reference to the testimony of Jeff Baldwin.

The substance of the objection is that the testimony was hearsay, and not *res gestae.* The evidence having been admitted, it is appel-lant's burden to show by his bill of exceptions that the court's ruling was wrong. A statement of the principles or rules upon which *res gestae* statements become admissible as an exception to the rule excluding hearsay furnish only in a qualified manner a guide to the appellate court in passing upon the ruling in a particular case. Of the practice in this court, the editor of Wharton's work on Criminal Evidence, p. 499, says:

"The Court of Criminal Appeals of Texas has so far departed from the definition in the admission of all facts, circumstances, statements, occurrences, before, accompanying, and after, that, as illustrating the rule, the cases would be of no value as to the limit set for *res gestae.* The practice in this court as to *res gestae* is readily explained from the fact that the Texas Court of Criminal Appeals always considers the entire record, weighing, analyzing, and thoroughly digesting all of the evidence before applying the law to the case at hand, and hence the admission as *res gestae* in the Texas court are not so harmful an application of the rules of evidence as in courts less painstaking with examination of records, and who dwell more upon the strict rules of law."

The accuracy of this statement is verified by an examination of the decided cases.

It is shown in the instant case that from a half to three-quarters of an hour elapsed between the time the fight took place in which the pistol was exhibited and the statement complained of was uttered. In Lewis' case, 29 Texas Crim. App., 202, the statement admitted was an hour and a half after the difficulty. In the case of Rice v. State, 54 Texas Crim. Rep., 150, it was made about an hour after the injury. With reference to the lapse of time, a similar ruling was made in Jones v. State, 52 Texas Crim. Rep., 305; and in Thomas v. State, 47 Texas Crim. Rep., 535. For other cases see Rose's Notes on Texas Reports, vol. 5, 808.

It is said they must spring out of the principal fact, tend to explain it, be voluntary, and made at a time so near as to preclude the idea of deliberate design. Obviously, under the application of the rule as it exists in this State, a certain degree of reliance upon the judgment and discretion of the trial judge, in determining whether the statement is made under circumstances which meet these requirements, must be placed. The witnesses say that Sallie Baldwin was not excited. The trial judge who heard the testimony had before him all of the circumstances, which went to show that thirty or forty minutes before the statement as made she and another negro woman had a fight in which this witness was badly worsted. At the time of this fight the appellant was in company with the other combatant, and, according to the witnesses, exhibited a pistol. The witness was bit through the nose. While Jeff Baldwin, the husband of Sallie Baldwin, was at the store where he had gone to communicate with the officers, his wife came, and, according to his testimony, she was bleeding about the nose. They then started to the home of Mr. Kuykendall, a white man, to report the trouble, and saw the appellant on the road between the store and Kuykendall's house. On seeing him, they got out of the road and went into the field and pursued their way; and at the time, or just before, they went into the field the remark complained of was made. The conclusion of the witness that there was no excitement was not binding upon the trial court, who evidently did not credit it, and, considering the circumstances, we cannot say he was not justified in drawing therefrom the conclusion that the mind of the witness Sallie Baldwin was not at the time in a condition to form a deliberate design. It appears that they did not see the appellant when they left the store, but saw him after, and when they did see him the remark was made and acted upon. This occurred while the parties were yet on the scene of the difficulty, or nearby, and while they were undertaking to communicate with the parties in authority, and we can discern nothing in the bill of exceptions which would authorize us to overturn the conclusion of the trial judge that the statement sprung out of the principal fact, tended to explain it, and was voluntary and spontaneous. The exhibition of the pistol was one of the incidents of the fight, and from the testimony of the State's witnesses was a means of intimidation.

We are unable to reach the conclusion that it is shown by the bill that in admitting the reference complained of the court transgressed the rules of evidence prevailing in this State.

The motion is overruled.

*Overruled.*