### IVORY JONES v. THE STATE.

No. 3818.    Decided December 18, 1907.

**1.—Murder—Sufficiency of the Evidence.**

See opinion for facts held sufficient to support a conviction for murder in the first degree.

**2.—Same—Res Gestae—Evidence.**

Where upon trial for murder the evidence showed that the wife of deceased was in bed in the house at the time her husband was shot on the gallery and did not see the shooting; that on account of conditions she lay there about an hour after the shooting, and not hearing from her husband, went to him and brought him into the room, asking him who shot him, and he replied the defendant; that in about fifteen minutes thereafter deceased remarked that he was going to die, and that he did die during the night, such testimony was admissible as res gestæ.

**3.—Same—Circumstantial Evidence—Charge of Court—Statement of Deceased.**

Where upon trial for murder the court's charge on circumstantial evidence was more favorable than the facts justified, and the statement of deceased possibly placed the case beyond the scope of circumstantial evidence, there was no error.

**4.—Same—Constitutional Law—Jury and Jury Law.**

Under the Constitution, article 5, section 13; article 1, section 10 id., and Bill of rights, section 15, as well as under articles 10, 21 and 22, Code Criminal Procedure, the right of trial by twelve jurors in a felony case is placed beyond the reach of the accused even waiving such right; and where in a trial for murder the jury was originally composed of twelve men, but one was excused by agreement of the parties and a verdict was rendered by eleven of the remaining jurors, who all signed the verdict, the same was a nullity, and reversible error.

Appeal from the District Court of San Augustine. Tried below before the Hon. W. B. Powell.

Appeal from a conviction of murder in the first degree; penalty, life imprisonment in the penitentiary.

The opinion states the case.

*Davis & Davis,* for appellant.—On question of circumstantial evidence: Hunt v. State, 7 Texas Crim. App., 212; Nolen v. State, 8 Texas Crim.

App., 585. On question of res gestæ: Foster v. State, 8 Texas Crim. App., 248. On question of charge on circumstantial evidence: Williams v. State, 10 Texas Crim. App., 8; Bennett v. State, 9 Texas Crim. App., 649.

*F. J. McCord,* Assistant Attorney-General, for the State.—On question of res gestæ: Badberry v. State, 22 Texas Crim. App., 273; Miller v. State, 31 Texas Crim. Rep., 609; Darter v. State, 39 Texas Crim. App., 40.

DAVIDSON, PRESIDING JUDGE.—Appellant was convicted of murder and given a life sentence.

The evidence of this case is not as cogent as some cases of this character passed upon on appeal, yet, there is in our opinion, enough to warrant us in concluding that the jury were correct in their finding.

Appellant was in the neighborhood of the homicide, had made threats against the deceased; deceased was a witness against him in a hog-stealing case. Appellant was seen the night of the homicide, and after the killing should have occurred, with a shotgun at what the witnesses term an "infair." This gun was handed to a named party to be kept until after the festive occasion had terminated. The deceased came to his death by means of a shotgun, both barrels of which was discharged into his body. About an hour after he was shot, his wife, who was in bed, managed to reach him and in answer to a question by her, appellant stated that deceased had shot him. This is the substance of the State's case. The defendant introduced evidence to the effect that he was in that neighborhood and accounted for his presence there, by showing that he was securing the signatures of certain parties to some appearance bonds that he was required by the sheriff to give under some criminal charges. He denied having a shotgun and the party to whom the State's witness stated that appellant handed the gun at the "infair" denied receiving it. Appellant showed by some of his counsel, perhaps all of them, defending him in the hog-stealing case, that the deceased was sufficiently favorable to appellant in that case, for the district attorney to continue said case in order to secure other testimony. They also attack the widow of deceased by showing she had on the day after the homicide, stated that deceased said nothing in regard to who killed him and that she further so testified before the grand jury. They also introduced the constable, who stated that he saw tracks in a certain corner of the fence near the residence of the deceased made by a party who wore a larger size shoe than appellant. This was practically appellant's side of the case. Without going into a discussion of this testimony, we are of opinion that it was sufficient, if the jury believed the State's side of the case, and this they did.

A bill of exceptions was reserved to the action of the court in permitting the widow of the deceased to detail before the jury the statement of the deceased that appellant was the party who shot him, on the

grounds, first, that it was not res gestæ and was too remote; and, second, that it was not brought within the rule of dying declarations. The facts show in this connection, as set out in the bill, that the wife was in bed at the time the shots were fired, having three days previously given birth to a child; that appellant was on the gallery with an older child at the time the shots were fired; that she lay there in bed about an hour, fearing to get up on account of her condition from childbirth; that her husband said nothing; that at about the expiration of an hour, she went out to see what was the matter, succeeded in getting him in the room and then asked him who it was shot him. He said Boy ·Polk; she asked again and he said Ivory Jones. It is further stated that Boy Polk was a name that Ivory Jones, appellant, was also known by, or called. One of the loads of shot took effect in the head, the other in the body. In about fifteen minutes, or such a matter, after he made the above statement, he remarked, "I allow to die," and during the night did die. Under the conditions above stated, we are of opinion that the evidence was admissible. See Lewis v. State, 29 Texas Crim. App., 201. Here there was about an hour intervening between the shot and the statement. His suffering was rather acute from the wound in the head, as well as that in the body, and evidently his mind was not in such condition as to manufacture and narrate a story. He had no opportunity to make a statement to anybody else, unless he had talked with his wife in another portion of the house. In Lewis' case, supra, the time extended over possibly an hour and a half, and the deceased in that case was not in position to make a statement earlier and her mind was also in a condition not to have manufactured the statement, at least, such was the theory upon which the testimony was held admissible. Under ·the Lewis case, we are of opinion that the alleged statement of the deceased was admissible.

Appellant attacked the charge on circumstantial evidence. We do not think there is any merit in that (see Smith v. State, 35 Texas Crim. Rep., 618), and besides, the giving of the charge on circumstantial evidence was more favorable to appellant's rights than the facts justify. The statement of the deceased places the case possibly beyond the pale of circumstantial evidence into one of positive testimony.

We think the charge in every way is free from such criticism as requires a reversal of the judgment. It is therefore affirmed.

*Affirmed.*

Henderson, Judge, absent.

ON REHEARING.

December 18, 1907.

DAVIDSON, PRESIDING JUDGE.—On a former day of this term the judgment herein was affirmed. There were two questions discussed in the opinion. Appellant files a motion for rehearing setting up the fact that he was tried by only eleven jurors. This was not mentioned in the motion for a new trial, therefore, was overlooked. An inspection of the

record discloses that a jury of twelve men was empaneled and the trial proceeded. Pending the trial information was conveyed to the court, to the attorneys and appellant that a brother of one of the jurors had been killed. It was thereupon agreed in open court by the parties, appellant, of course, being present, that the juror should be excused on account of this homicide of his brother. He was excused and participated no further in the trial. The verdict was returned by the remaining eleven jurors. The motion for a rehearing calls our attention to these matters and urges that we set aside the prior affirmance and reverse the judgment because the verdict was returned by only eleven jurors. It may be further stated that the verdict was signed by each of the eleven jurors. In other words, it is conclusively shown that after the twelfth man was excused the case was tried by only eleven jurors. We are of opinion that appellant's motion for a rehearing should be granted. Article 5, section 13, of our State Constitution, reads as follows: "Grand and petit jurors in the district courts shall be composed of twelve men; but nine members of a grand jury shall be a quorum to transact business and present bills. In trials of civil cases, and in trials of criminal cases below the grade of felony in the district courts, nine members of the jury, concurring, may render a verdict, but when the verdict shall be rendered by less than the whole number, it shall be signed by every member of the jury concurring in it. When pending the trial of any case, one or more jurors, not exceeding three, may die, or be disabled from sitting, the remainder of the jury shall have the power to render the verdict; provided, that the Legislature may change or modify the rule authorizing less than the whole number of the jury to render a verdict."

It will be observed from the reading of this section of the Constitution, that a petit jury in the district court, shall be composed of twelve men. This being a felony case is not brought within the provision of the Constitution which authorizes nine members of the jury, concurring, to render a verdict. Nor was the juror excused, brought within that provision of said section which authorizes a jury to render a verdict where not exceeding three of them died or were disabled from sitting. Then we have a jury originally composed of twelve men, one excused by agreement of the parties and a verdict rendered by eleven which is prohibited by the above section of the Constitution. Section 10, of article 1, guarantees to the accused a trial by an impartial jury and that as was seen in the section quoted above, means twelve jurors. Section 15 of the Bill of Rights, is as follows: "The right of trial by jury shall remain inviolate." Article 10, of the Code of Criminal Procedure, reiterates this provision of the Bill of Rights, in precisely the same language. Article 21 of said Code of Criminal Procedure, provides: "No person can be convicted of a felony except upon the verdict of the jury duly rendered and recorded." Article 22 of the same code, enacts: "The defendant in a criminal prosecution for any offense may waive any right secured to him by law, except the right of trial by jury in a felony case."

It would seem that the constitutional provisions cited, as well as the

acts of the· Legislature in obedience thereto, place the right of trial by ·twelve jurors in a felony case, even beyond the reach of the accused party waiving such right. These provisions have been the subject of adjudication in many opinions in this State, all of them holding as sacred, the right of trial by jury even in the face of a waiver by the accused where the prosecution is for a felony. See Lott's case, 18 Texas Crim. App., 627; Stell v. State, 14 Texas Crim. App., 59; Jester v. State, 26 Texas Crim. App., 369; Huebner v. State, 3 Texas Crim. App., 458; McCampbell v. State, 37 Texas Crim..Rep., 607; Ogle v. State, 43 Texas Crim. Rep., 219. There are many other supporting cases which we deem unnecessary to collate.

The motion for rehearing is granted and the former affirmance set aside, and because appellant was tried without a constitutional jury the judgment is now reversed and the cause remanded.

*Reversed and remanded.*

Henderson, Judge, absent.