BILLY JOE HOUSTON V. STATE

No. 27,855. January 4, 1956.

Rehearing Denied February 22, 1956.

Appellant's Second Motion for Rehearing Denied
(Without Written Opinion) March 21, 1956.

C. A. *Droby* and *Robert H. Stimson,* [*Angelo Piranio* of Counsel] Dallas, for appellant.

*Henry Wade,* Criminal District Attorney, *James K. Allen, Thomas B. Thorpe, George P. Blackburn,* Assistants Criminal District Attorney, Dallas, and *Leon Douglas,* State's Attorney, Austin, for the state.

MORRISON, Presiding Judge.

The offense is rape; the punishment, death.

Since the sole defense was that of insanity, the state's case will be summarized.

A fifty-four year old Dallas housewife responded to a knock on her door, where she was met by a twenty-six year old married industrial worker who was masked and armed. At the point of a pistol, he robbed her of five dollars, forced her to enter a bedroom, ordered her to disrobe, had intercourse with her in one fashion, and, not being satisfied, ordered her to her knees and required her in vulgar language to commit an act of sodomy upon his private parts. Following this, he consummated the act of intercourse in another fashion, then bound and gagged her, and left the house admonishing his victim not to call the police and threatening to return and kill her if she did.

As he walked through the front yard, where he abandoned the silk stocking mask which he had been wearing, he was accosted by Policeman Hillard, who, thanks to the alertness of Mrs. Patterson, a neighbor, was on the scene. Hillard asked for the appellant's identification and was in the process of questioning him when the woman who had been raped called out to him. The appellant, who had until this moment acted normally toward the officer, began to back away, drawing his pistol. The appellant fired twice at the officer, and the officer felled the appellant with his service revolver.

After the gunfight and prior to the arrival of the ambulance, while his victim was in the front yard identifying the appellant, the appellant extracted a bill from his person and threw it at her, saying "I only took five dollars from you."

The appellant's mother, wife, various family friends and former co-workers, testified that the appellant had not always acted normally and expressed the opinion that he was insane.

The state countered with medical and lay testimony to the effect that the appellant was sane.

The jury resolved this disputed issue of the appellant's sanity against him, and the evidence amply supports their verdict.

We shall discuss the bills of exception so ably presented by appellant's court-appointed counsel in brief and oral argument.

Bill of Exception No. 1 relates to the formation of the jury. From it, we learn the following: After several of the venire had been selected, sworn and sent to the jury room, the juror Harris was selected and joined the others. While waiting for the jury to be completed, Harris fell backward in his chair and sustained certain injuries. This fact was made known to the court, who, after securing the approval of the appellant personally and his counsel, sent a doctor, accompanied by an officer, to the jury room. The doctor reported to the court that juror Harris required immediate hospitalization and would be unable to sit on the trial. At this juncture, the court explained to appellant personally and to his counsel that Harris might be excused from the panel if all agreed, and if they did not agree the veniremen who had been selected would be discharged and the trial would be held at a later date. After consultation with his attorneys, the appellant agreed to discharge Harris and continue with the selection of the panel. After the panel was completed, without

the appellant having exercised all of his challenges, the court again called the appellant and his counsel to the bench and offered to discharge the completed panel and start all over again if the jurors then in the box were not satisfactory to all concerned. The appellant again stated that the jury which they had just completed selecting was satisfactory to him.

Appellant contends that, even though he agreed to the discharge of juror Harris, he had no legal right to do so and may now ask for a reversal of this conviction.

He relies upon four cases, all by the court of appeals before the creation of this court. In Early v. State, 1 Crim. App. 248, the jury separated after their selection had been completed and after they had heard some of the evidence. This court held that a new trial should have been granted because of the danger of injury to appellant inherent in any jury separation. In Hill v. State, 10 Crim. App. 618, eight of the jurors had been accepted when the court on his own motion, without the consent of the appellant or his counsel but without the appellant objecting, excused one of the eight. This court held that the fact that the accused stood mutely by, neither consenting nor objecting, did not waive the appellant's rights to complain of the action of the court.

In Ellison v. State, 12 Crim. App. 557, after eleven of the jurors had been selected, one of the eleven made it known to the court that he was suffering from an ailment. The court, without the consent and over the objection of the accused, excused the juror and completed the panel. This court held that the trial court should have excused the entire panel and proceeded with the formation of another.

In Sterling v. State, 15 Crim. App. 249, decided in 1883, the most recent case upon which the appellant relies, before the selection of the jury was complete, one who had been selected made it known to the court that there was illness in his family, and the court excused him from the jury. Appellant's counsel agreed that the juror might be excused, but the appellant remained silent. This court held that there must be an express waiver of the accused himself and that the action of his counsel could not bind him.

We think that the statement of the facts reflected by this bill distinguishes this case from those relied upon by the appellant. We do observe, however, that the trend of judicial decision

in this state is best reflected by Burton v. State, 129 Tex. Cr. Rep. 234, 86 S. W. 2d 763, decided by this court fifty-two years after the Sterling case. In the Burton case, after some of the jurors had been selected, the court learned that one of them had been convicted of a felony and was thus disqualified to act as a juror. The court discharged the disqualified juror, over the appellant's objection, and this court affirmed the judgment.

In the case at bar, it is shown that the careful trial court gave the accused his option at every stage in the process of jury selection, and the appellant, we have concluded, should not be allowed to complain that he exercised such option unwisely.

Bill of Exception No. 2 relates to jury argument in which the prosecutor said:

"What did he do then? The most *abhorant* thing that you men could imagine to your minds—was to order this woman who you saw here—this 54 year old woman to get down on her bare knees and lick, lick his sexual parts."

In Lewis v. State, 265 S. W. 709, we said:

"In stating to the jury the facts embraced in the argument, counsel apparently added nothing to that of which the jury was aware through the legal introduction of testimony. Ordinarily it is not beyond the scope of proper argument to comment upon facts legally before the jury."

Bill of Exception No. 3 relates to argument of practically the same nature.

Bill of Exception No. 4 relates to the following argument:

"Let's look here a minute and see what this filmsy defense that you had of insanity."

We think it proper for any advocate to disparage the case of his opponent if he speaks with propriety and does not go outside the record. We do observe considerable conflict in the testimony of the defense witnesses on the issue of insanity. Some of his fellow employees testified that in their opinion the appellant was insane, while others stated that he was sane. Some defense witnesses testified that the appellant had been normal and had been a good worker before he went into the armed services but acted strangely after his discharge, while others testified

that he had acted peculiarly since infancy. Appellant's wife gave incidents of forgetfulness as manifestations of the appellant's insanity. She said that on the morning of the rape he had acted strangely in that he drove through a red light and then denied having done so. She admitted, however, that the appellant had just completed a twelve-hour night shift and looked sleepy.

We have concluded that what we have said with respect to Bills of Exception Nos. 2 and 3 properly disposes of Bills of Exception Nos. 5, 6, 7 and 8. Certainly, under the facts of this case, the prosecutor was authorized to characterize this case as an aggravated one which empowered him to urge the jury to inflict the death penalty.

In the light of the penalty here involved, we have carefully examined the record in its entirety and fail to find any reversible error.

The judgment is affirmed.

DAVIDSON, Judge (dissenting).

The Constitution of 1845, Sec. 12 of Art. I thereof, provides that "The right of trial by jury shall remain inviolate." The same provision was carried into and preserved in the subsequent revisions of the Constitution, including that of 1876 (our present Constitution), where it appears as Art. 1, Sec. 15 thereof.

To strengthen and fortify that constitutional provision and to guard against any waiver or destruction of or disobedience to the right of trial by jury, the legislature of this state, when it came to promulgate our first or original code, declared by Art. 26 thereof that the right of trial by jury could not be waived by a defendant in a felony case.

The same statutory provision has been incorporated in and made a part of every code enacted since that time, and appears in our present code as Art. 11 (C. C. P.).

It is apparent, therefore, that our founding fathers wanted to be sure that in this state the right of trial by jury should not be abridged or denied and that under no circumstance would an accused be permitted to waive that right in the trial of a felony case. Up until 1931, the statute applied to all trials for a felony. At that time the inhibition against waiver was restricted to trials of felony cases when a plea of not guilty was entered.

So, for over a hundred years without deviation or question, the Constitution and laws of this state have prohibited waiver of trial by jury in a felony case where a plea of not guilty is entered. The constitutional and statutory provisions mentioned have not been repealed by any authority with power to do so; they remain a part of the Constitution and laws of this state.

However, by the opinion my brethren have this day delivered in this case, the constitutional and statutory provisions mentioned have been destroyed as effectively as if they had been repealed by a vote of the people or an act of the legislature. For my brethren hold that the appellant did waive his right of trial by jury and that, having done so, he could not complain thereof. Their holding marks a new and hitherto unheard-of departure from the established and recognized law of this state.

I do not agree to that conclusion, and record my dissent as follows:

The appellant, here, was on trial for rape.

After several persons had been selected, empaneled, and sworn as jurors in the case, one of that number became incapacitated to the extent that he was unable to continue on the jury. The trial court consulted with counsel for the respective parties and the appellant, in person, with the view of ascertaining if there was any objection to discharging the juror. Appellant registered no objection and agreed that he might be discharged.

The juror was discharged, and another was selected and sworn, in his stead. After the jury of twelve had been selected and sworn, the appellant was again asked if he had any objections to the jury as thus empaneled. He replied in the negative.

There is no question but that if one accused of a capital felony could waive the constitutional and statutory right to a trial by jury, the appellant has done so in this case. On the other hand, if the Constitution and laws of this state prohibit one on trial for a capital felony from waiving his right of trial by jury or of agreeing to the discharge of a juror, appellant's waiver or attempted waiver of that right is of no force or effect and is unenforceable.

My brethren hold that the right of trial by jury may be waived and that appellant, here, did waive such right.

I do not agree to that conclusion, for I am of the opinion that under the Constitution and laws of this state the appellant could not waive his right of trial by jury.

The question for determination here may be stated, then as follows:

After a person has been duly selected, empaneled, and sworn as a juror in the trial of a capital felony, may the trial court, with the express consent of the defendant, excuse and discharge such juror and substitute in his place another juror without violating the Constitution and laws of this state?

Art. 1, Sec. 15, of the Constitution of this state reads as follows:

"The right of trial by jury shall remain inviolate. The Legislature shall pass such laws as may be needed to regulate the same, and to maintain its purity and efficiency . . . "

That means exactly what it says — that is, that under no circumstances or conditions shall the right of trial by jury be violated or rendered without force or effect.

Art. V, Sec. 13, of the Constitution requires that a jury in the district court be composed of twelve men. By recent amendment, the term, "men," as there used, includes both male and female persons.

Art. 11, C. C. P., reads as follows:

"Waiver of rights

"The defendant in a Criminal prosecution for any offense, may waive any right secured him by Law except the right of a trial by a Jury in a felony case when he enters a plea of not guilty."

So, by the Constitution and laws of this state, the right of trial by a jury of twelve persons in a felony case must remain inviolate and the defendant cannot waive that right when he pleads not guilty to the accusation against him.

The question presented for determination is not, as my brethren hold, one of waiver by the appellant. The Constitution and the statute say that such waiver cannot be granted to any

one at any time at any place. Rather, the question here is whether the facts show that trial by jury, as known to the Constitution and laws of this state, has been denied or violated. If so, the Constitution and laws of this state prohibit a trial under such condition.

Neither the Constitution nor the statutes of this state define the phrase, "trial by jury," as used therein. That phrase has a definite meaning in the common law—which is here applicable and controlling.

In Patton v. United States, 281 U. S. 276, 74 L. Ed. 854, 50 S. Ct. 253, we find this definition:

"That it (trial by jury) means a trial by jury as understood and applied at common law, and includes all the essential elements as they were recognized in this country and England when the Constitution was adopted, is not open to question. Those elements were: (1) That the jury should consist of twelve men, neither more nor less; (2) that the trial should be in the presence and under the superintendence of a judge having power to instruct them as to the law and advise them in respect of the facts; and (3) that the verdict should be unanimous."

The definition appears to be universally accepted. This court so recognized, in Randel v. State, 153 Tex. Cr. R. 282, 219 S. W. 2d 689.

It is of paramount importance to notice that the first element of trial by jury is that the jury be composed of twelve persons, no more nor no less.

Here, thirteen jurors took the oath and were sworn in as jurors to try this case. Of the twelve first selected and sworn, only eleven served on the jury. The jury was thereby reduced to that number. The thirteenth juror who was sworn in this case became a member of the jury which rendered the verdict in this case.

The question eventually turns, then, upon the right of the trial court to discharge the juror.

Art. 622, C. C. P., provides that as and at the time each juror is selected in a trial of a capital felony case he must be sworn. Art. 623, C. C. P., provides that when jurors have been sworn in a capital case those so sworn shall be kept together

and not permitted to separate until a verdict has been rendered or the jury finally discharged. So then, when a juror is sworn in a capital felony case he becomes and is a member of the jury. When twelve are sworn, the jury is complete.

The holding in Ellison v. State, 12 Tex. App. 557, is directly in point upon the question as to whether the discharged juror was, in fact, a member of the jury at the time of his discharge. We there said:

"It is our conclusion, and we so hold, that after a juror has been once empaneled in a felony case, it is beyond the power of the court to excuse him from serving in the case, and that in case of sickness or accident rendering it impracticable to proceed with the trial of the case before the jury as then constituted, the court should discharge that jury, and proceed to form another for the trial of the case."

The case of Hill v. State, 10 Tex. App. 618, is there cited by the court as authority supporting that conclusion.

My brethren refuse to follow the holding in the Ellison case because the juror was excused without the consent and over the objection of the accused.

Want of consent of the accused to the discharge of the juror is therefore made the determining factor, and not whether the trial court had the power to discharge the juror.

I am at a loss to understand that reasoning, in the face of the Constitution and the statute and the holding in the Ellison case, above set out. Consent of the accused could never authorize a trial court to do that which the Constitution and laws of this state prohibit.

As supporting their conclusion that an accused may consent to the discharge of an empaneled juror in a capital felony case, my brethren cite Sterling v. State, 15 Tex. App. 249. In that case the question arose as to permitting an empaneled juror to go home and remain with his family overnight, due to illness in the family. The accused and his counsel agreed that the juror might do so if he were placed in charge of an officer. The trial court refused to agree thereto, but remarked: "If you will all agree to the discharge of . . . (the juror), he may be discharged." Counsel for the accused agreed that the juror might be dis-

charged; the accused, himself, made no objection; and the juror was discharged.

In holding as error the action of the trial court in discharging the juror, the court restated the rule announced in the Ellison case, supra, to the effect that it was beyond the power of a trial court to excuse an empaneled juror in a felony case and that if an occasion arises where an empaneled juror must be discharged the entire jury should be discharged.

The Sterling case does not hold that an accused may waive the discharge of an empaneled juror, as my brethren suggest. In fact, it holds to the exact contrary.

My brethren cite Burton v. State, 129 Tex. Cr. R. 234, 86 S. W. 2d 768, as supporting their conclusion that a trial court may discharge an empaneled juror in a felony case with or without the consent of the accused.

The person who had been empaneled in that case was absolutely and unequivocably disqualified from serving as a juror in the trial of any case because of his previous conviction of a felony. He could not be a juror, and no amount of swearing or empaneling could, then, qualify him to sit as a juror in the case.

The Burton case, supra, does not touch the question here under consideration, nor are the cases above cited overruled therein—which would necessarily follow if the Burton case controlled the disposition of the question before us.

To my mind, it is clear, under the Constitution and laws of this state and the holdings of this court, that a trial court cannot and does not have the power or legal authority to discharge a juror who has been empaneled and sworn, as such, in the trial of a felony case. If a trial court does discharge such a juror, then all members of the jury at that time are discharged, because the jury is destroyed.

As was pointed out in the Ellison case, supra, the trial court in such cases should discharge the jury and proceed to form another. That is exactly what the trial court should have done in this case when he discharged the one juror. Consent of the appellant could not change or affect the situation.

In reaching my conclusion here, I am not unmindful of the

fact that courts of some of the other jurisdictions hold that an accused in a felony case may waive the right to be tried by a jury composed of less than twelve persons.

One of the cases I have in mind is that of Patton v. United States, supra. The holding in that case was based upon provisions of our Federal Constitution which do not expressly embody the language or prohibition contained in Art. I, Sec. 15, of our Constitution and in Art. 11, C. C. P.

We have no federal constitutional provision that trial by jury shall remain inviolate, nor is there a federal statute which says that the right of trial by jury cannot be waived.

In the annotation to that case (70 A. L. R. 281), it is made clear that the conclusion reached (in the Patton v. U. S. case, supra), as well as the like holding of other cases, is predicated upon the absence of a specific statute or constitutional provision prohibiting the waiver of the right to be tried by a jury composed of less than twelve persons. The same annotation calls attention to the cases which support "the rule that, in the absence of specific statutory or constitutional provisions providing for the waiver of a full jury, a defendant in a felony case cannot waive his right to be tried by a jury of twelve, and consent to a trial by a fewer number; or at least that such consent does not confer jurisdiction upon the court to proceed with such a jury, in view of state statutes and constitutional provisions preserving trials by jury."

Among the authorities supporting the rule stated above, the cases of Jones v. State, 52 Tex. Cr. R. 303, 106 S. W. 345, and Dunn v. State, 88 Tex. Cr. R. 21, 224 S. W. 893, from this court, are listed. Those cases, as well as others subsequent, announce the rule to be that, in Texas, the defendant could not waive the right of trial by jury or the right to be tried by twelve jurors.

The State of Utah had a statute which required that the defendant in a felony case must be personally present at the trial.

It appears, in Hopt v. State of Utah, 110 U. S. 574, 28 L. Ed. 262, that the accused was not present during the selection of some of the jurors. It was insisted that he could not waive his presence at the trial. The Supreme Court of Utah affirmed the conviction. The Supreme Court of the United States reversed the conviction. I quote from that opinion:

"We are of the opinion that it was not within the power of the accused or his counsel to dispense with the statutory requirement as to his personal presence āt the trial. The argument to the contrary necessarily proceeds upon the ground that he alone is concerned as to the mode by which he may be deprived of his life or liberty, and that the chief object of the prosecution is to punish him for the crime charged. But this is a mistaken view, as well as of the relations which the accused holds to the public as of the end of human punishment. The natural life, says Blackstone, 'cannot legally be disposed of or destroyed by any individual, neither by the person himself nor by any other of his fellow creatures, merely upon their own authority.' 1 Bl. Com., 133. The public has an interest in his life and liberty. Neither can be lawfully taken except in the mode prescribed by law. That which the law makes essential in proceedings involving the deprivation of life or liberty cannot be dispensed with or affected by the consent of the accused; much less by his mere failure, when on trial and in custody, to object to unauthorized methods. The great end of punishment is not the expiation or atonement of the offense committed, but the prevention of future offenses of the same kind. 4 Bl. Com., 11. Such being the relation which the citizen hold to the public, and the object of punishment for public wrongs, the Legislature has deemed it essential to the protection of one whose life and liberty is involved in a prosecution for felony, that he shall be personally present at the trial, that is, at every stage of the trial when his substantial rights may be affected by the proceedings against him. If he be deprived of his life or liberty without being so present, such deprivation would be without that due process of law required by the Constitution."

While it has been a long time since Mr. Justice Harlan uttered these words, to me they are just as true and controlling today as when he wrote them. Especially is that true in states where, as in Texas, the legislature has not seen fit to let the right to waive substantial rights in a felony case depend, solely, upon the Constitution or upon due process, but has prohibited, by statute, the waiver of some of those rights, such as the right to be tried by a jury of twelve persons, no more no less.

It was beyond the power of the accused in the Hopt case, by reason of the statute of that state, to waive his personal presence at his trial. By the same reasoning in this case, the appellant could not waive his right of trial by jury, because the statute of this state forbids it. In my opinion, the Hopt case is direct authority supporting my conclusion.

It must be remembered that it is within the power of the legislature to pass all such laws as it deems proper, so long as constitutional guarantees and provisions are not violated.

There is nothing in our State Constitution that prevents the legislature from saying that one accused of a felony may not waive the right of trial by jury.

The statute (Art. 11, C. C. P.) is entirely valid and constitutes the expression of the people speaking through their representatives. It must be given the construction that the prohibition against waiver of trial by jury is a part of the framework of government.

Art. I, Sec. 10, of the Constitution provides that no person shall be held to answer for a criminal offense (felony) unless under indictment by a grand jury.

In Hollingsworth v. State, 87 Tex. Cr. R. 399, 221 S. W. 978, we said:

"It is the fundamental law of Texas that no man can be tried for a felony, except upon an indictment presented by a grand jury. This is prerequisite to conferring jurisdiction upon the court in the first instance."

The prohibition contained in the constitutional provision is no more sacred or binding than is the statute (Art. 11, C. C. P.) and Art. 1, Sec. 15, Const. of Texas.

Surely my brethren would not hold that one might waive indictment in a felony case by advising the trial court that he was perfectly willing to stand trial without an indictment being first returned against him.

I am well aware of the fact that this record reveals that the appellant has committed a diabolical crime and that the verdict of the jury, under facts, was entirely authorized.

I am not able to say that appellant's waiver of his right of trial by jury induced or brought about the verdict which was rendered herein. Nor do I suggest that had the discharged juror remained on the jury a different result would or might have been attained. The error in permitting appellant to waive his right of trial jury does not appear to have redounded to his injury in the conviction or penalty assessed.

On the other hand, I have an abiding conviction that no man should be condemned to death or suffer punishment at the hands of the law until and unless he has first been condemned by a trial in accordance with the Constitution and laws of this state.

The judiciary of this state, trial and appellate, has no more right to refuse to obey the law than does the humblest citizen. The Constitution and laws of this state are neither the making nor the responsibility of the judicial branch of government. It is the duty and responsibility of the judiciary to see that the guarantees contained in the Constitution are preserved and that the mandates contained in our statutes are obeyed—and this, without fear or favor. When this is done, the judiciary has fulfilled its purpose.

So far as I am concerned, this record shows that the statute of this state which says that an appellant can not waive his right of trial by jury was here violated by the trial court. This court ought not to refuse to so hold, nor should it justify or excuse that violation.

When the warden of the penitentiary of this state pulls the switch that sends this appellant to his death in the electric chair, he will be inflicting the punishment assessed and decreed at a trial in violation of the Constitution and laws of this state.

All that I can do is to enter my solemn protest, which I here do.

### ON APPELLANT'S MOTION FOR REHEARING

WOODLEY, Judge.

Counsel for appellant again urges that reversal of this conviction should be ordered because 13 jurors were sworn to try him. It is conceded that, insofar as possible for them to do so, appellant and his counsel agreed that the injured juror might be excused and the selection of the jury continue without the other jurors who had been selected being discharged.

It is, however, urged upon us that to affirm this conviction would be to hold that an accused who is on trial for a capital felony may waive a jury trial.

And it is argued that the authorities cited in the majority opinion do not support its holding.

That one accused of a capital offense may not waive a jury is beyond question. This principle of law is settled by statute as well as by the many decisions of this court construing the constitutional guarantee of the right of trial by jury. Const. of Texas, Art. 1, Sec. 15; Art. 11, V.A.C.C.P.; Kemp v. State, 159 Tex. Cr. R. 110, 261 S. W. 2d 573; Jones v. State, 52 Tex. Cr. R. 303, 106 S. W. 345.

It is also the well settled law of this state that a jury in the district court means a jury composed of 12 jurors. Such is the requirement of the Constitution of Texas, Art. V, Sec. 13. Clark v. State, 161 Tex. Cr. Rep. 278, 276 S. W. 2d 819.

It is true that 13 jurors were sworn to try the case before us. One of these, having become disabled so as to prevent his serving, was excused before the jury was complete, and therefore necessarily before any evidence was heard.

Appellant and his counsel admittedly agreed that this juror might be excused.

Having been stood aside, this juror was no longer a member of the jury.

Appellant and his counsel were given the choice as to whether the organization of the jury should continue with the jurors who had been selected, or whether such sworn jurors should be discharged and the selection of a jury begin anew. They chose to keep the jurors already sworn and the jury being completed again chose to be tried before the 12 so selected rather than to accept the court's offer to discharge them.

This it is contended constituted the waiver of a jury by appellant and his counsel.

As to appellant's contention that the swearing of 13 jurors to try the case violated his constitutional rights and is ground for reversal, we call attention to the line of cases which hold that where a juror has been selected in a capital case, for good cause shown why the juror cannot or ought not to serve on the jury not known and which could not have been discovered before the juror was impaneled, the trial court in his discretion may, before evidence is offered, stand the juror aside and another

juror may be selected and sworn in his place. Mitchell v. State, 43 Tex. 512; Evans v. State, 6 Tex. App. 513; Black v. State, 46 Tex. Cr. R. 590, 81 S. W. 302.

In Evans v. State, 6 Tex. App. 513, the defendant was charged with murder.

After the jury had been selected and sworn, the defendant made known to the court that one of the jurors had formed and expressed an opinion of the case unfavorable to the defendant and said he intended to hang him.

The juror was withdrawn at the request of the defendant, the county attorney agreeing, and another juror was selected in his place.

The defendant's special plea for discharge because of the excusing of the sworn juror and substitution of another was overruled, this court saying:

"As a general rule, it is too late, after the jury has been empanelled and sworn, to inquire into the impartiality of a juror. But, Mr. Wharton says, after a juror has been sworn in chief, and taken his seat, if it be discovered that he is incompetent to serve, he may, in the exercise of a sound discretion, be set aside by the court at any time before evidence is given; and this may be done even in a capital case, as well for cause existing before as after the juror was sworn. The great purpose of the right to challenge a jury for actual bias is to secure to the defendant and the State a fair and impartial jury. It not only appears that the defendant consented to the discharge of the juror Huddle, but that it was done at his instance. The principle of justice applies here, as in other cases, that no man can complain of a thing to which he has given his consent. The doctrine of waiving constitutional rights does not rest, as a matter of reason, merely on the consideration that a man may relinquish what has been given him for his benefit; it rests equally, also, on the necessity of conducting causes in a way to secure justice to defendants. If they never could waive any thing, says Mr. Bishop, 'the law, on the other hand, must pursue them with exact aim, since it could make no arrangement to vary its course.' 1 Bishop's Cr. Law, Sect. 848. This does not conflict with the rulings of our Supreme Court in the case of Horbach v. The State, 43 Texas, 242, where the court say: 'No law, or established practice under the law, is known which sanctions the premptory challenge of a juror, by either party in such

case, after the juror is accepted and empanelled, whether the jury be full or not, though there may be discretion in the court for excusing or setting aside a juror after he is thus selected, for good cause shown at the time why he cannot or ought not to serve on the jury.' Nor does it conflict with the rulings of this court in the case of Baker v. The State, 3 Texas Ct. App. 525."

In Black v. State, 46 Tex. Cr. R. 590, 81 S. W. 302, a death penalty for murder was affirmed.

After 4 jurors had been selected, one of them made known to the court that he desired to make an explanation in regard to his answers to questions on his voir dire examination. Being permitted to do so, the juror stated that he was opposed to the infliction of the death penalty for crime under any circumstances.

The state's challenge was sustained and the defendant excepted.

The trial judge informed counsel that upon further reflection he was inclined to the opinion that the juror would have to remain on the jury or else the whole panel would have to be discharged, and offered to discharge the jurors who had been selected, reset the case and draw another venire.

The defendant objected to such procedure, urging that the court had no right to discharge the panel without his consent, and contended that he could not be placed on trial again.

Over the objection of the defendant, the court then proceeded with the organization of the jury without the presence of the juror who was excused.

This court, citing a number of authorities including State v. Horbach, supra, Baker v. State, supra, and Evans v. State, supra, held that the ruling of the trial court in sustaining the state's challenge to the juror was, under the circumstances, correct and the action of the court in proceeding with the organization of the jury was not illegal.

It is quite true that the court in Black v. State, distinguished the Ellison case, 12 Tex. App. 557, because it dealt with a sick juror and not a juror who was subject to challenge for cause. But it is apparent that the death penalty verdict was upheld

though 13 jurors, counting the one stood aside, were sworn to try the case.

The majority opinion herein calls attention to the fact that in Ellison v. State the defendant refused to agree and objected to the juror being excused and another juror selected in his stead.

In Warren v. State, 130 Tex. Cr. R. 448, 94 S. W. 2d 430, the trial court declined to discharge an accepted and sworn juror who, it had been discovered, was related to the special prosecutor within the prohibited degree. This court, citing Evans v. State, supra, said:

"It occurs to us that if the trial court had seriously considered the appellant's request and had examined the statutes hereinabove referred to, he no doubt would have complied with the appellant's request at that stage of the trial and discharged the juror."

In Burton v. State, 129 Tex. Cr. R. 234, 86 S. W. 2d 768, this court quoted liberally from Black v. State supra and held that it was not error for the trial court to stand aside a juror who had been sworn when it was learned that he had been convicted of a felony.

It is true that in Burton v. State the court was dealing with a juror whose disqualification was absolute, and as pointed out in appellant's motion for rehearing, there is language in the opinion to the effect that it was not shown what happened to the other jurors that had been sworn.

Such is not true as to Black v. State, supra, where the juror was objectionable to the State because of his scruples against capital punishment, or in Evans v. State and Michell v. State, supra, where the juror had expressed an opinion which was unfavorable to the defendant. In each of these cases the sworn juror was excused and the jury completed with 12 other jurors, and the conviction by such jury was upheld.

There is a vast difference between waiving a jury trial and waiving the ordinary procedure governing the impaneling of the jury of 12 who are finally selected to try the case.

We hold that prior to the introduction of testimony the trial court, the defendant and his counsel consenting, is not without

auhority to stand aside a juror who has been sworn to try the case but has become unable to do so, and with the consent of the defendant proceed with the organization of the jury, another juror being selected in the place of the excused juror. Such, we think, does not constitute a trial by a jury of more than 12, nor a waiver of a constitutional right to a jury trial.

Appellant's motion for rehearing is overruled.