Otis R. THOMPSON, Appellant,

v.

STATE of Texas, Appellee.

No. 30522.

Court of Criminal Appeals of Texas.

April 8, 1959.

On Motion for Rehearing Oct. 7, 1959.

Joseph A. Calamia, Daniel Y. Garbern, El Paso, W. E. Martin, Jack W. Knight, Houston, for appellant.

William E. Clayton, Dist. Atty., Edwin F. Berliner, Asst. Dist. Atty., El Paso, and Leon B. Douglas, State's Atty., Austin, for the State.

WOODLEY, Judge.

The offense is rape; the punishment, ten years.

Bill of Exception No. 1 complains of the action of the court in declining to order mistrial and discharge the entire jury panel after one juror, of the six selected and sworn, who was not challenged by either the State or the defense, was excused by the court.

The trial judge, acting under authority of Lee v. State, Tex.Cr.App., 301 S.W.2d 114, called Juror Katz from the jury room and excused him under the following circumstances:

The juror was sworn and empaneled after he was examined by both sides and accepted as the fifth juror. Then a sixth juror was accepted and sworn.

At this point the trial judge received a note from Juror Katz stating that he desired to change two answers he gave to Mr. Calamia, stating "(1) It might embarrass me to find against Mr. Ed Berliner (Assistant District Attorney). (2) My answers with reference to suspended sentence."

Appellant's counsel moved for mistrial upon the basis of the juror's words, but declined to agree to the court's suggestion that he say whether he wanted the juror called back to establish the correctness of the statement; if he wanted the court to discharge the juror; if he wanted the court to discharge the juror if what was stated in the note was correct; and whether he agreed to release the Juror Katz and go on without a mistrial.

The court took the motion for mistrial under advisement and the six selected jurors remained together until the next

morning, at which time appellant renewed his motion for mistrial.

Juror Katz was then called and examined by the court and by counsel for appellant. He testified that his acquaintance with Mr. Berliner had been so close that his leaning would be toward his side and would influence him in arriving at a verdict. Also he testified that if the defendant was found guilty he would not be in favor of a suspended sentence.

Appellant renewed his motion for mistrial which was overruled, and the juror was excused by the court with the statement: "Both sides are entitled to jurors who do not have any prejudices. I am excusing this juror on the authorities laid down by Lee v. State, [Tex.Cr.App.] 301 S.W.2d 114."

Appellant urges upon us the authorities holding that a juror in the position of Katz was subject to challenge for cause, but was not disqualified.

Had the trial judge ordered the trial to proceed with Katz on the jury, appellant's failure to challenge him for cause would have made applicable the authorities holding that a challenge based on prejudice or bias may be waived.

To say that appellant did not object to Juror Katz remaining on the jury would be in the face of the record. He did not in words challenge the juror for cause, but from the time the writing of the note was made known to him appellant insisted that not only Katz but the entire jury panel be discharged.

The bill does not complain that the five jurors who had been selected should have been discharged because Juror Katz had been in the jury room with them. It complains only that the entire panel was not excused and a mistrial ordered.

In Black v. State, 46 Tex.Cr.R. 590, 81 S.W. 302, the juror was called from the box and excused after he sent a note to the judge saying he had conscientious scruples against the death penalty. Black objected and stated he would claim jeopardy if the entire panel was excused.

The juror was challenged by the State.

In Houston v. State, 162 Tex.Cr.R. 551, 287 S.W.2d 643, Judge Davidson in his dissent took the position that the trial judge was without lawful authority to excuse an empaneled juror, and that when conditions or circumstances arise which make it necessary that an empaneled juror be excused the proper and legal method would be to excuse the entire panel. Judge Davidson reiterated his view in Lee v. State, Tex.Cr.App., 301 S.W.2d 114, 117, but joined in the affirmance upon authority of the majority holding in Houston v. State to the contrary.

Appellant seeks to distinguish the Lee case because the juror was excused without being challenged by either side whereas the juror in the Lee case was challenged by the State for cause.

In Mitchell v. State, 1875, 43 Tex. 512, 515, four jurors had been selected in the case (murder) when an affidavit was filed stating that one of them had said he wanted to get on the jury to try Mitchell; that he was guilty and that he wanted to hang him.

The defendant would not consent to the court's announced intention of setting aside this juror, whereupon the court permitted the district attorney to withdraw his acceptance of him and the jury was completed from the venire, defendant excepting.

The Supreme Court of Texas held that it was not only within the discretion of the trial court but was its duty to purge the jury and set aside the juror whose presence on the jury would taint the verdict, and that no injury was shown.

Under the authorities cited we find no reversible error in Bill of Exception No. 1.

The evidence shows that appellant went to an El Paso residence about midnight and was admitted by an eight year old child who resided there with her mother and a three year old sister. The mother was not at home and the two children were being cared for by a maid who lived in Mexico.

The maid, who is the prosecutrix, slept in the living room where appellant found her clothed only in her brassiere and pants.

Within a few minutes appellant had sexual intercourse with the nineteen year old girl who spoke only Spanish, which appellant did not understand.

Appellant was armed with a pistol which, according to the prosecutrix, he placed on the table near the couch. She testified that she "was not letting him do anything" but when he "tried to get ahold of the pistol" she did not "oppose him any more."

Appellant left accompanied by the Mexican girl he had never seen before and both he and a companion had intercourse with her in the automobile while the other was driving.

The girl immediately reported the matter, first by demonstrating to the eight year old girl with a toy pistol, and then to her employer who came in shortly after she was returned and the little girl let her in.

Appellant admitted having sexual relations with the girl on both occasions and his companion testified that he had intercourse with her in the car. Both testified that the girl consented, and denied that the pistol was exhibited or used or that any threats were made.

The court submitted the case as one of rape by threats and the State elected to rely upon the act of intercourse in the house.

The district attorney, in questioning an officer who was in search for appellant's pistol, mentioned a Mrs. Thompson. We find nothing in the record to support appellant's theory that this was calculated to and did convey to the jury that appellant was a married man. "Mrs. Thompson" may have been appellant's wife or she may have been his mother, or some other Mrs. Thompson. The record does not show and we cannot assume that the question referred to appellant's wife or that the question was asked in bad faith.

The complaint as to the testimony relating to the prosecutrix identifying appellant in a line up, in view of his testimony that he was the man who had sexual relations with her, is overruled. If error it was rendered harmless by appellant's testimony.

The employer of the prosecutrix, and mother of the children in the home where appellant found and had intercourse with the maid, testified that she had gone out with appellant and on one occasion he drove to a motel and asked her to get out.

"Q. And what did you do? A. And I said 'No.' Oh Golly! I said: 'If I was going to fool around I would do it because I wanted to, and not because I was forced into it.'

"Q. And did that seem to satisfy him? A. No.

"Q. And what did he do  *  *  *"

At this point the court interrupted. Appellant's counsel stated "A man is on trial here for an offense  *  *  *" and the court sustained the objection.

In the absence of a motion to strike the testimony above quoted, we perceive no error which would authorize a reversal.

The remaining claims of error have been considered and are overruled.

The judgment is affirmed.

## On Appellant's Motion for Rehearing

DAVIDSON, Judge.

A majority of this court have concluded that we erred in affirming this case and that a reversal should be ordered for the following reasons:

By bill of exception # 2, it is shown that before the introduction of any testimony and out of the presence and hearing of the jury appellant sought to have the trial court admonish state's counsel that he was married and that the state's witnesses as well as counsel should not mention or prove such fact upon the trial of the case.

The record reflects that notwithstanding such request proof was made that the officer went to appellant's home on more than one occasion and there talked with a Mrs. Otis Thompson (appellant's name being Otis Thompson).

The testimony of two other witnesses was susceptible of the same construction.

Appellant objected to such proof as showing that he was married.

The objection and the motion for a mistrial because of such proof were overruled.

In the recent case of Johnson v. State, 164 Tex.Cr.R. 204, 298 S.W.2d 132, 62 A.L.R.2d 1064, we had occasion to review the admissibility of the evidence in a rape case showing that the accused was married, and we there discussed at length the prior cases upon that question. The conclusion there reached was that proof of such fact is ordinarily inadmissible and becomes admissible only when it tends to solve some issue in the case.

The conclusion is here reached that under the instant facts proof that appellant was married and lived with his wife was prejudicial error.

Another ground for reversal is found in the proof that appellant attempted to forcibly have sexual intercourse with another woman at a tourist court on another and separate occasion. Branch's P.C., 2d Ed., Vol. 4, p. 288, Sec. 1962.

With the above conclusions my brother MORRISON, Presiding Judge, concurs.

Accordingly, appellant's motion for rehearing is granted, the affirmance is set aside, and the judgment is now reversed and the cause is remanded.

The writer is convinced that the evidence is insufficient to support the conviction. For that reason, which to me is paramount, I would reverse, and, as supporting that conclusion, I present the following independent views:

The indictment charged rape by force and threats. The case was submitted to the jury solely upon the law of threats. Any question of force was thereby eliminated from the case, as also removed from the jury's consideration.

In connection with and as a part of his charge upon the law of threats, the trial court gave the following instruction to the jury:

"* * * in this case, you are instructed that to constitute rape by threats, the defendant must have ravished Idelia Torres, the alleged injured female, by having carnal knowledge of her against her will and without her consent by the use of threats, and the threats used, if any, must have been such as might have reasonably created in the mind of the said Idelia Torres, a just fear of death and great bodily harm to her, in view of the relative condition of the parties as to health, strength, and other circumstances of the case * * *."

That charge followed the provisions of Art. 1185, Vernon's Ann.P.C.

Upon the trial of the case the evidence showed more than one transaction involving a charge of rape by threats against the appellant.

The trial court restricted the jury's consideration and appellant's guilt to the first transaction which, according to the testimony of the prosecutrix, occurred at the Zabel residence about 11:30 o'clock the night of January 25, 1958.

The sufficiency of the evidence to sustain appellant's conviction must be restricted to that transaction and tested under the definitions and limitations contained in the charge of the court, especially that portion above set out.

The prosecutrix, a nineteen-year-old Latin American mother of an illegitimate child two years of age, could neither speak nor understand English. On the night in question, the prosecutrix was at the home of Mrs. Zabel in the capacity of baby-sitting for Mrs. Zabel's two children, Donna, eight years of age, and Marsha, four years of age. She had been in Mrs. Zabel's employ for about three or four weeks. She slept on a divan in the living room, which adjoined the bedroom of Mrs. Zabel and the two children.

About nine o'clock, p. m., prosecutrix and the two children retired for the night, the children in their bedroom and the prosecutrix, clothed only in her panties and brassiere, on the divan. About eleven o'clock a knock on the door of the house awakened the older child, Donna, who answered the knock and opened the door. Prosecutrix, too, awoke and asked the child not to open the door. Appellant entered the room. Prosecutrix remained in bed and pulled the cover over her. According to her testimony she did not know the appellant and had never seen him before. Appellant approached the divan where prosecutrix lay and, as he did so, removed from his coat a pistol, which he placed on a table close to the

divan. He then removed the bed covering and began petting and loving the prosecutrix, during which time he removed her panties and brassiere. Seeing the child Donna in the room, appellant told her to leave, which she did.

Thereupon, appellant removed his coat and trousers and engaged in an act of sexual intercourse with prosecutrix.

After completion of the act, appellant and prosecutrix dressed and left the house and went to a waiting automobile, in which a male companion of appellant was seated.

After reaching the car, which was parked near the house, prosecutrix told appellant she wanted to go back to the house to get her coat. While appellant waited in the car she returned to the house and got her coat from the closet in the bedroom occupied by the children. When they began to cry she told them she would come back soon.

The prosecutrix then voluntarily returned to the car and left with appellant and his companion, who later did the driving.

The foregoing facts were developed and shown by the direct testimony and admission of the prosecutrix.

On cross-examination of the prosecutrix, she added nothing to her direct testimony in so far as proof of the threats antecedent to the act of intercourse was concerned.

The state introduced as a witness the eight-year-old girl, Donna, who testified that on the night in question she answered the door and admitted appellant, whom she knew because he had visited her mother on a prior occasion in their home; that at the direction of the prosecutrix she returned to her room to bed; that she heard appellant and prosecutrix talking but was unable to understand anything they were saying; that later she saw

prosecutrix get her coat, comb her hair, and leave the house with appellant; that prosecutrix told her "she would be back in a little while"; and that she (Donna) then locked the door and returned to her room to bed.

The witness Donna was not asked whether nor did she testify that at the time prosecutrix got her coat and brushed her hair and left with appellant she (the prosecutrix) was nervous or excited or showed any evidence of having been raped. The witness' failure to so testify strongly indicates that such was not the case.

The foregoing are the facts upon which this conviction must be tested.

Appellant admitted that he went to the home of Mrs. Zabel to see her (Mrs. Zabel), that she was not at home, and that he engaged in an act of intercourse with the prosecutrix with her full consent and acquiescence.

It is apparent that appellant's guilt depended upon the unsupported and uncorroborated testimony of the prosecutrix as to what happened while she and appellant were in the house.

Cognizance must be taken of the fact that the testimony of the prosecutrix fails to reflect that appellant made any statement or spoke any word showing or which could be construed as a threat that "might reasonably create a just fear of death or great bodily harm * * *" to the prosecutrix. Art. 1185, Vernon's Ann.P.C.

The legislature has not specified how or through what medium the threats in a rape case must be made—that is, whether by some oral statement, written statement, or acts done. All the legislature appears to have done in defining the term "threats" is to specify the effect and not the method or manner employed in making such threats.

The criterion for such cases is that whatever is said or done must be such as to cause the prosecutrix to yield to the defendant and must be sufficient to create a fear of death or great bodily harm. Art. 1185, Vernon's Ann.P.C.; Diggles v. State, 99 Tex.Cr.R. 288, 269 S.W. 88.

As distinguished, then, from rape by force, rape by threats goes much further, because the acts or conduct of the defendant must involve death or serious bodily injury to the prosecutrix, with no actual violence applied.

In rape by force, the force required is such "as might reasonably be supposed sufficient to overcome resistance." Art. 1184, Vernon's Ann.P.C.

On the other hand, rape by threats depends entirely upon the seriousness of the threats. Art. 1185, Vernon's Ann.P.C.

Any threat, then, which is less than or does not amount to a threat to kill or to inflict serious bodily injury is not and cannot be sufficient to constitute rape by threats. Fear, scare, or mental condition which does not amount to a fear of death or serious bodily injury is not a threat within the meaning of the law of rape by threats.

Such was the burden the state assumed to establish when it brought this prosecution. Did the state discharge that burden?

The most favorable construction that can be given to the testimony as showing a threat is that appellant had a pistol on his person which he removed from his clothing and placed on a nearby table, where it remained until the act of intercourse was complete.

The testimony of the prosecutrix does not reflect that preceding the act of intercourse appellant threatened to use the pistol or that he made any statement or demonstration or did any act showing that he was going to inflict death or serious bodily injury upon her if she did not yield to his demand for carnal knowledge of her.

I cannot bring myself to agree that the testimony is sufficient to authorize appellant's conviction.

In reaching that conclusion I cannot lose sight of the fact that after the act of intercourse the prosecutrix dressed, combed her hair, and left with the man she said raped her by threatening death or serious bodily harm and that she went out to the waiting automobile with him, returned to the house for her coat while appellant waited in the car, and after obtaining her coat voluntarily returned to the car after having told the child Donna that she "would be back in a little while" and evidencing nothing to indicate to the child that she (prosecutrix) had been mistreated in any manner or that she had accompanied appellant from the house against her will.

The testimony strongly suggests that the sexual act relied upon for a conviction was with prosecutrix' consent, especially in view of the fact that the statement of facts nowhere shows the prosecutrix testified directly and positively that the sexual act was without her consent.

When want of consent is alleged, as here, and the injured party testifies as a witness, want of consent must be expressly shown by the witness and circumstantial evidence will not be sufficient to establish that fact. Art. 1410, Note 36, Vernon's Ann.P.C.

Here, the evidence fails to show that the act of intercourse was without the consent of the prosecutrix. The state alleged want of consent in the indictment, and assumed the burden of making that proof.

This appellant may have threatened to kill the prosecutrix or do her great bodily harm, thereby causing her to yield to the act of intercourse, but I cannot find where she so testified.