# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-01-00571-CR

**Cynthia Jean Dowdy, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF WICHITA COUNTY, 78TH JUDICIAL DISTRICT
### NO. 35,045-B, HONORABLE ROY T. SPARKMAN, JUDGE PRESIDING

Appellant Cynthia Jean Dowdy was convicted by a jury of possession of methamphetamine and sentenced to eight years= confinement, suspended for eight years, and a $500 fine. Dowdy appeals, contending that she is entitled to reversal due to (1) comments and questions by the State prosecutor during *voir dire* and (2) the introduction of evidence of an extraneous offense. We will affirm.

In her first four issues, Dowdy complains of the following statements made by the prosecutor at the beginning of *voir dire*, as he explained the *voir dire* process:

As I stated, I have served on a civil jury before. And for those of you who want to serve on juries, in this case or in the future, the best way to do that is to say nothing. Because if we don=t know anything about you, then you=re less likely to offend either side. Because the process of jury selection is not so much selection of jurors that you want to have on your jury. It=s a process of elimination of jurors that you don=t want to have on your jury. What we=re seeking is as much information **B** both parties are. And if you talk a lot, then you=re likely to offend or scare one of the two sides. So if you want to serve on the jury,

I=d encourage you to be as quiet as possible. But if you don=t want to serve, like most folks, unfortunately, then go ahead, speak up, let us know your opinions. The only oath that you=ve taken right now is to give true answers to all the questions that are given to you.

Dowdy did not object to the statement.

Dowdy contends that the prosecutor=s statements amounted to structural error to which no objection was necessary to preserve error. Alternatively, Dowdy contends that even if an objection was required, the error rose to the level of fundamental error and deprived her of a fair and impartial jury.

Generally, a defendant=s failure to timely object to an alleged error waives any complaint on appeal. Tex. R. App. P. 33.1(a); *Norris v. State*, 902 S.W.2d 428, 446 (Tex. Crim. App. 1995). However, some error is of such a magnitude as to constitute a Astructural defect affecting the framework within which the trial proceeds.@ *Arizona v. Fulminante*, 499 U.S. 279, 309-10 (1991); *Rey v. State*, 897 S.W.2d 333, 344-45 (Tex. Crim. App. 1995); *see Batiste v. State*, 888 S.W.2d 9, 13 (Tex. Crim. App. 1994) (Agreat majority of constitutional violations@ are not structural error). Structural error occurs only when the error strips a defendant of basic protections without which a criminal trial cannot reliably determine guilt or innocence. *Fulminante*, 499 U.S. at 309-10 (structural error in denial of right to self-representation, public trial, or assistance of counsel or in unlawful exclusion from grand jury based on race); *Rey*, 897 S.W.2d at 345. Courts have also considered unpreserved error in limited cases where the error is Afundamental,@ meaning it was an error so egregious that it deprived the defendant of a fair and impartial trial. *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984).

2

Other than Acertain federal constitutional errors labeled by the United States Supreme Court as >structural,= no error . . . is categorically immune to a harmless error analysis.@ *Cain v. State*, 947 S.W.2d 262, 264 (Tex. Crim. App. 1997) (footnote omitted); *see Marin v. State*, 851 S.W.2d 275, 278-79 (Tex. Crim. App. 1993) (discussing absolute, waivable-only, and forfeitable rights). In a harmless-error analysis, the reviewing court must reverse a judgment unless it determines beyond a reasonable doubt that the constitutional error did not contribute to the conviction or punishment. Tex. R. App. P. 44.2(a). Other errors that do not affect a defendant=s substantial rights must be disregarded. *Id.* 44.2(b).

Dowdy omits from her brief the remainder of the prosecutor=s statement:

> And where we sometimes come into trouble B And recently we=ve had to throw out a trial that took a whole week B is when a juror has information about a past experience or a strong feeling about the law and they fail to disclose that. And so it really is important for the system that everyone speak honestly and forthrightly. And remarkably, in my six years of practice here in Wichita County, people are willing to tell us things that frankly I don=t think they=d tell their closest friends and family members sometimes. But it=s because this is such an important system. It=s an important matter, seeking justice.

Further, Dowdy=s attorney addressed the prosecutor=s remarks in her own *voir dire* remarks, stating:

> One of the things that [the State] said early on B and it distressed me, and I think he kind of tried to back up from it, but what he was saying was AWell, say nothing. Say nothing. Just don=t talk. If you want to be on this jury, just don=t talk[.]@ And not only are there some recent examples of B particularly criminal cases where there had to be new trials because jurors didn=t B weren=t candid, and forthcoming, and so forth. But I=ve personally experienced in several cases where we wound up with exactly that kind of problem. . . . So you know, I know that [the State] didn=t really mean to encourage you not to talk. Okay? And B But it=s terribly important. It=s really important.

Later in *voir dire*, Dowdy=s attorney returned to the subject, saying, A[Veniremember], you remember when you talked about earlier B See, this is what happens. [The State] warned you those people who talk get called back on it.@

Although the prosecutor may have chosen unfortunate phrasing for his point, we believe that when read in the context of his entire remark, it is clear that he was not encouraging the veniremembers to remain silent so much as he was explaining the need for honest and complete answers. He was appealing to an unfortunate, if common, perception that jury service is a burden to be avoided if possible. Dowdy=s attorney=s remarks confirm this and further emphasized the need for cooperation and disclosure by the panel members.

Dowdy does not cite any cases in which similar *voir dire* statements were held to rise to the level of structural or fundamental error. To the contrary, a defendant=s failure to object to improper *voir dire* statements has been held to waive the complaint on appeal. *Draughon v. State*, 831 S.W.2d 331, 336-37 (Tex. Crim. App. 1992); *Boyd v. State*, 811 S.W.2d 105, 113 (Tex. Crim. App. 1991); *Jenkins v. State*, 870 S.W.2d 626, 629 (Tex. App.CHouston [1st Dist.] 1994, pet. ref=d); *see also Hill v. State*, 827 S.W.2d 860, 863-64 (Tex. Crim. App. 1992) (indicating that error related to racially-motivated jury strikes may be waived by failure to object timely); *Day v. State*, 784 S.W.2d 955, 957 (Tex. App.CFort Worth 1990, no pet.) (defendant waived complaint related to juror=s qualifications when appellate complaint differed from trial objection). Having reviewed the record in its entirety, we do not believe that the prosecutor=s statement or the district court=s failure to *sua sponte* declare a mistrial rose to the level of structural or fundamental error. *See Draughon*, 831 S.W.2d at 336-37; *Boyd*, 811 S.W.2d at 113;

4

*Jenkins*, 870 S.W.2d at 629.  Thus, an objection was necessary to preserve Dowdy=s complaint on appeal.  No such objection having been raised, Dowdy has waived her complaint on appeal.  Tex. R. App. P. 33.1(a).  We overrule Dowdy=s first four issues on appeal.

In Dowdy=s fifth and sixth issues, she contends the prosecutor asked several improper Acommitment@[1] questions of the venirepanel, thus committing structural, or in the very least, fundamental error.

The prosecutor posed to the venirepanel the following questions:

Is there anybody who would require in a possession case an eyewitness who saw somebody actually holding it?  For possession?

. . . .

Anybody who would require an eye-witness about somebody handling a particular item, or could you infer from the circumstances that a person was in possession?  Could you look at all the facts?

How about fingerprints?  Would somebody require fingerprints on an item in order to convict in a possession case?  Or once again, could you consider all the facts?

. . . .

Anybody require something like medical evidence that a defendant was using drugs?  Or could you just consider the facts B Because, let me tell you, in a court-tried case here in the courtroom, there are rules of evidence that are going to allow some evidence, and the Judge is rightfully going to disallow some evidence.  And I believe that medical

---

[1] A Acommitment@ question asks a veniremember to set the hypothetical parameters of her decision making.  *Standefer v. State*, 59 S.W.3d 177, 180 (Tex. Crim. App. 2001).  Not all commitment questions are improper and objectionable.  *Id.* at 181.

evidence is probably one of those things I=ve never seen come in. But I=ve heard jurors talk about that after trials, which is why I bring that up.

Anybody have a problem with not requiring medical evidence?

Dowdy contends that the prosecutor=s questions and the district court=s failure to *sua sponte* declare a mistrial comprise structural or fundamental error. We disagree.

For the same reasons discussed above, we do not believe that these allegedly improper *voir dire* questions rose to the level of structural or fundamental error. The questions did not so affect the framework of the trial as to undermine the reliability of the jury process. *See Fulminante*, 499 U.S. at 309-10; *Rey*, 897 S.W.2d at 345. Nor do we believe they stripped Dowdy of a fair and impartial trial. *See Jimenez v. State*, 32 S.W.3d 233, 238 (Tex. Crim. App. 2000). Although the court of criminal appeals recently discussed the propriety of commitment questions, it did not indicate that improper commitment questions must be treated as structural or fundamental error. *See Standefer v. State*, 59 S.W.3d 177, 180-83 (Tex. Crim. App. 2001). Dowdy has not directed us to cases holding similar questions to be fundamentally or structurally erroneous.

By failing to object at trial, Dowdy has waived her complaint on appeal. Tex. R. App. P. 33.1(a). We overrule Dowdy=s fifth and sixth issues on appeal.

In Dowdy=s seventh issue, she again argues that the district court committed structural or fundamental error by failing to *sua sponte* declare a mistrial or instruct the jury to disregard evidence of an extraneous offense introduced by one of the State=s witnesses.

In a pretrial hearing, the district court granted Dowdy=s motion in limine barring the admission of extraneous offense evidence except for possible Asame transaction contextual evidence@ related to Awhat happened that day.@ At trial, the State called George Kreidler to testify. Kreidler was

6

arrested with Dowdy by officers who were attempting to serve an arrest warrant on Kreidler. During his testimony, the following exchange took place without objection:

Q: [by State] And how did you come to know Ms. Dowdy?

A: I was on drugs back then, so I mean I met her through B I think it was Larry Teague brought her over one night, and we were all doing some drugs. And I met her just once prior to her coming over the day of May 21st [the day of the arrest].

Q: And when approximately would that have been?

A: Oh, probably a couple of months prior to May.

Kreidler said Dowdy was not at his house for purposes related to his lawnmower-repair business. Dowdy testified on her own behalf that she came to be at Kreidler=s house because she needed her lawnmower repaired. She claimed that when she arrived at his house, Kreidler asked her to give him a ride to another location and back. She agreed, waited in the car as instructed at the second location, and then drove him back to his house. When they arrived at his house, she saw drugs and paraphernalia. She said she was preparing to leave when the police arrived.

Dowdy contends that Kreidler=s testimony that he had met her once before the day of their arrest and that they Awere all doing some drugs@ violated the district court=s order granting her motion in limine.

Even if we assume that Kreidler=s testimony was not describing how Dowdy came to be at his house on the day they were arrested and that it, in fact, violated Dowdy=s motion in limine, we do not believe that the testimony and the district court=s failure to act *sua sponte* to instruct the jury to disregard the evidence or to declare a mistrial comprised fundamental or structural error. *See Ethington v. State*, 819

7

S.W.2d 854, 858 (Tex. Crim. App. 1991) (defendant generally must Acontinue to object each time inadmissible evidence is offered@); *Gonzales v. State*, 685 S.W.2d 47, 50 (Tex. Crim. App. 1985) (AFor error to be preserved with regard to the subject matter of [a] motion in limine[,] it is absolutely necessary that an objection be made at the time when the subject is raised during the trial.@). Dowdy has not provided this Court with any authority holding that the admission of this type of evidence is fundamentally erroneous or egregiously harmful. In fact, Dowdy=s insistence that the district court should have instructed the jury to disregard the evidence indicates that the error was mere trial error and thus, required an objection to preserve it. Dowdy has not preserved her complaint for appeal. *See Norris*, 902 S.W.2d at 446 (lack of trial objection waived complaint as to extraneous offense evidence never linked to defendant; objection would have allowed State to present additional proof or given trial court opportunity to strike testimony). We overrule Dowdy=s seventh issue on appeal.

We have found that Dowdy failed to preserve any error and have overruled all of her appellate issues. We affirm the district court=s judgment.


Lee Yeakel, Justice

Before Chief Justice Aboussie, Justices B. A. Smith and Yeakel

Affirmed

Filed: August 30, 2002

Do Not Publish