**Martin Allen DRAUGHON, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 69863.**

Court of Criminal Appeals of Texas, En Banc.

May 13, 1992.

Rehearing Denied June 24, 1992.

Roger Bridgwater, Houston, for appellant.

John B. Holmes, Jr., Dist. Atty., Winston E. Cochran, Jr., and Jan Krocker, Asst. Dist. Attys., Houston, and Robert Huttash, State's Atty., Austin, for the State.

OPINION

BENAVIDES, Judge.

After robbing the employees of a Houston restaurant at gunpoint, and while fleeing the scene of his crime, Appellant shot Armando Guerrero, a bystander, to death. For this offense he was convicted of capital murder. *See* Penal Code, § 19.03(a)(2). The jury answered the special punishment issues affirmatively, and the trial judge sentenced him to death. Art. 37.071(b), V.A.C.C.P. His appeal to this Court is automatic. *See* Art. 37.071(h), V.A.C.C.P.; Tex.R.App.Proc., rule 40(b)(1).

I.

In his first point of error, Appellant maintains that the trial judge erred in permitting the State to question prospective jurors concerning their attitudes toward the death penalty.[1]

1. Specifically, appellant contends that the judge should not have denied his motion in limine to such effect. The motion to which he refers, however, is not truly a motion in limine, since it does not constitute a request that the admissibility of evidence or disposition of other matter by the court be determined outside the jury's presence. *Norman v. State,* 523 S.W.2d 669, 671 (Tex.Crim.App.1975), *cert. denied* 423 U.S. 930, 96 S.Ct. 280, 46 L.Ed.2d 259. *See also Romo v. State,* 577 S.W.2d 251, 252 (Tex.Crim.App.1979). *Accord Union Carbide Corp. v. Burton,* 618 S.W.2d 410, 415 (Tex.Civ.App.—Houston [14th Dist.] 1981, writ ref. n.r.e.). Ordinarily, we do not consider a motion in limine sufficient to preserve for appellate review a complaint regarding the exclusion of evidence, because there is no adverse ruling on the admissibility of such

Both parties in a criminal trial have the right to exclude from jury service for cause any veniremember whose beliefs would "render[ ] him incapable or unfit to serve on the jury." Art. 35.16, V.A.C.C.P. The parties may also exclude a limited number of qualified veniremembers for idiosyncratic reasons.[2] Art. 35.15, V.A.C.C.P. Consequently, within reasonable limits both the State and the defendant must be allowed to explore any attitudes of veniremembers which might render them challengeable for cause or otherwise subjectively undesirable as jurors. *Guerra v. State,* 771 S.W.2d 453, 467–468 (Tex.Crim.App.1988); *Mathis v. State,* 576 S.W.2d 835, 836 (Tex.Crim. App.1979); *Smith v. State,* 513 S.W.2d 823, 826–827 (Tex.Crim.App.1974). In a death penalty case, such attitudes plainly include beliefs concerning the propriety, efficacy, and desirability of capital punishment as a component of the criminal justice system. *Hafti v. State,* 487 S.W.2d 745, 748 (Tex. Crim.App.1972).

Just as the accused is entitled to discover those prospective jurors who hold uncommonly harsh views of retribution and punishment, so also is the State free to search out those who might be unusually lenient. *Cf. Campbell v. State,* 685 S.W.2d 23, 25 (Tex.Crim.App.1985); *Powell v. State,* 631 S.W.2d 169 (Tex.Crim.App.1982). Such persons, even if not ultimately challengeable for cause, may prove relatively less appealing to one side or the other on account of their views. *Martinez v. State,* 588 S.W.2d 954 (Tex.Crim.App.1979). The fact that peremptory exclusion of these people by the State may effectively remove those who view the death penalty with disapproval is a deliberate consequence of our legal system, and gives rise to no implication of unfairness or impropriety. Certainly, challenging for cause veniremembers whose extreme opposition to capital punishment would prevent or substantially impair performance of their duties is neither legally nor constitutionally impermissible. *Wainwright v. Witt,* 469 U.S. 412, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985); *Holland v. State,* 761 S.W.2d 307, 315 (Tex.Crim. App.1988), *cert. denied* 489 U.S. 1091, 109 S.Ct. 1560, 103 L.Ed.2d 863. Challenges, either for legal cause or by peremptory right, cannot be intelligently made in a vacuum. Accordingly, the trial judge did not err in refusing generally to prohibit questions on the subject.

Appellant's first point of error is overruled.

II.

In his second point of error Appellant complains that the trial judge erroneously allowed a State's challenge for cause against a veniremember who had already been accepted for jury service, sworn and empanelled.[3]

evidence until it is tendered and an objection interposed. *Armitage v. State,* 637 S.W.2d 936, 938 (Tex.Crim.App.1982); *Brazzell v. State,* 481 S.W.2d 130, 131 (Tex.Crim.App.1972). *See also Maynard v. State,* 685 S.W.2d 60, 63–64 (Tex. Crim.App.1985). *Accord Tempo Tamers, Inc. v. Crow–Houston Four, Ltd.,* 715 S.W.2d 658, 662–663 (Tex.App.—Dallas 1986, writ ref. n.r.e.). In the present context, however, we think appellant's motion, although styled "Motion in Limine," was sufficient to apprise the trial judge of his complaint, and that the judge's adverse ruling upon it was authoritative enough to obviate the necessity for further objection during the *voir dire* examination of particular veniremembers. Tex.R.App.Proc. 52(a), (b). *Cf. Riojas v. State,* 530 S.W.2d 298, 301 (Tex.Crim.App. 1975). *See also Norman,* 523 S.W.2d at 672–673 (concurring opinion of ONION, P.J.); *Hernandez v. State,* 767 S.W.2d 902, 903–904 (Tex. App.—Corpus Christi 1989, PDR granted on other grounds). Accordingly, we reach the merits of appellant's contention on appeal.

2. Such reasons may not, of course, be racially motivated. *See* Art. 35.261, V.A.C.C.P.; *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

3. Appellant alleges, without elaboration, that discharge of this juror deprived him of his right "to a fair trial by an unbiased jury of his peers[,]" in violation of the Sixth Amendment to the United States Constitution and Article 1, Sections 10 and 15 of the Texas Constitution. He also maintains, again without any explanation, that the trial court's action deprived him of his right to "due process and equal protection of the law[,]" contrary to the Fifth and Fourteenth Amendments of the United States Constitution and Article 1, Section 19 of the Texas Constitution.

Except insofar as these claims are analogous to those addressed in our existing case law on the subject, cited hereinbelow, we are unable to discern any specific constitutional argument in appellant's contentions.

The dispute arose when a previously sworn juror in this cause approached the trial judge prior to the conclusion of jury selection and before the taking of evidence with information indicating for the first time that her views regarding the death penalty would substantially impair the performance of her duties. As a result the judge permitted further examination of the juror by both parties and ultimately sustained the State's challenge for cause against her.

As we have held on several occasions in the past, a trial court does not lack authority to reconsider the qualifications of a prospective juror. *McManus v. State,* 591 S.W.2d 505, 521–522 (Tex.Crim.App. 1979); *Bodde v. State,* 568 S.W.2d 344, 350 (Tex.Crim.App.1978); *Lee v. State,* 164 Tex. Cr.R. 532, 301 S.W.2d 114 (1957) (plurality opinion by Woodley, J.); *Houston v. State,* 162 Tex.Cr.R. 551, 287 S.W.2d 643, 652 (1956) (opinion on motion for rehearing), *cert. denied* 351 U.S. 975, 76 S.Ct. 1042, 100 L.Ed. 1492; *Black v. State,* 46 Tex. Cr.R. 590, 81 S.W. 302, 303–304 (1904) (opinion on original submission). *See also Thompson v. State,* 168 Tex.Cr.R. 320, 327 S.W.2d 745, 746 (1959) (opinion on original submission). At least where, as here, the entire jury has not yet been selected and no evidence received in trial of the cause, the judge is permitted general discretion to allow further examination and to entertain additional challenges when it comes to his attention that a previously selected juror may be objectionable for cause, excusable, or otherwise disqualified from jury service.[4] We, therefore, perceive no error in allowing the prosecutor a meritorious challenge for cause under the circumstances presented here.[5]

Appellant's second point of error is overruled.

III.

At the punishment phase of trial in this cause, the State offered proof that Appellant had previously committed a number of other offenses, including the unlawful carrying of a weapon. *See* V.T.C.A., Penal Code § 46.02. The officer who arrested him on the weapon charge was permitted to testify, over objection, that he seized a woman's stocking from Appellant's shirt pocket at the time of arrest. In his third point of error, Appellant contends that such testimony should not have been received in evidence.

Because Appellant wore a stocking over his head while committing the offense for which he was convicted in this cause, and had done so while committing other aggravated robberies in the past, both parties agree that reference to the stocking implies Appellant was planning to commit yet another robbery at the time he was arrested for carrying a weapon. Thus we first inquire whether the State may prove at the punishment phase of a capital trial that the accused has planned other offenses. We think it abundantly clear that the State is indeed entitled to do this.

In many capital prosecutions the most significant punishment issue in the case is whether the defendant will likely commit "criminal acts of violence" in the future. Art. 37.071(b)(2), V.A.C.C.P. We think proof that he was planning such acts even at the time of his arrest for another offense clearly has a "tendency to make the existence of [this] fact ... more probable ... than it would be without the evidence." Tex.R.Cr.Evid. 401. *McManus,* 591 S.W.2d

4. The last serious attack on this proposition was mounted by Judge Davidson, dissenting in *Houston,* 287 S.W.2d at 646, wherein he opined that discharge before verdict of a previously sworn and empanelled juror violated the constitutional requirement in Texas of trial by a jury of 12 persons, nonwaivable in a capital prosecution. The cases upon which he there relied, *Hill v. State,* 10 Tex.App. 618, *Ellison v. State,* 12 Tex.App. 557, and *Sterling v. State,* 15 Tex.App. 249, were inferentially disapproved to the extent of any conflict on original submission in *Houston,* 287 S.W.2d at 645–646, and we do not regard them as having significant precedential force today.

5. Appellant does not contend that inadequate cause existed for challenging this juror. Moreover, because he does not claim to have suffered any specifically unfair disadvantage here, we have no occasion to pass upon the limits, if any, of the trial judge's discretion in this regard.

at 526.[6] Certainly, we are unwilling to hold that the trial judge erred in thinking so. *See Green v. State,* 587 S.W.2d 167, 169 (Tex.Crim.App.1979), *cert. denied* 453 U.S. 913, 101 S.Ct. 3146, 69 L.Ed.2d 996 (the trial judge has broad discretion to determine relevance of evidence at the punishment phase of a capital murder prosecution).

Since both parties agree that the challenged testimony is relevant to this question, its admissibility is assured unless there is a legal policy for excluding it. Tex.R.Cr.Evid. 402. Here, Appellant merely contends that the testimony should have been disallowed because possession of a woman's stocking does not in itself constitute a crime, nor does it definitely establish that he was preparing to commit one.

Of course, we agree that the testimony is not conclusive. Yet relevant evidence is often inconclusive, standing alone, and the parties are free to debate its inferential significance and probative weight before the jury in their closing arguments. The weakness of this evidence does not, however, render it inadmissible unless it has a relatively strong potential for unfairly prejudicing the defendant. *See* Tex.R.Cr.Evid. 403. Otherwise, its admissibility is not affected by the fact that it may be inconclusive or unpersuasive upon the significant matter to which it relates.

Because Appellant does not suggest any specific legal policy for exclusion of the testimony, nor does he maintain that it was unfairly prejudicial to him, his third point of error is overruled.[7]

## IV.

Appellant's fourth point of error alleges that the trial court should not have permitted the prosecuting attorney, during the *voir dire* examination of prospective jurors, to characterize the victims and their families in this case as her "clients." No objection was interposed on behalf of Appellant at the time.

The prosecuting attorney in a criminal action does not represent a private interest. *See* Arts. 2.01, 2.02, V.A.C.C.P. Any contrary suggestion, communicated to a juror or prospective juror in the case, is therefore erroneous, whether it occurs during *voir dire,* final argument, or some other important stage of the trial. *Rougeau v. State,* 738 S.W.2d 651, 657 (Tex.Crim. App.1987), *cert. denied* 485 U.S. 1029, 108 S.Ct. 1586, 99 L.Ed.2d 901.

Nevertheless, we do not regard the objectionable implication as so threatening to the fairness of a criminal trial that the judge must intervene to correct it even when not asked to do so by the defendant. As is usually the case, failure to complain

6. *Cf. Herrera v. State,* 682 S.W.2d 313, 321 (Tex. Crim.App.1984) *cert. denied* 471 U.S. 1131, 105 S.Ct. 2665, 86 L.Ed.2d 282 (past threats of violence are probative of future dangerousness); *Demouchette v. State,* 591 S.W.2d 488, 492 (Tex. Crim.App.1979) *cert. denied* 453 U.S. 913, 101 S.Ct. 3146, 69 L.Ed.2d 996 (advance preparation for commission of the charged offense is probative of future dangerousness); *Gholson v. State,* 542 S.W.2d 395, 397–398 (Tex.Crim.App.1976) *cert. denied* 432 U.S. 911, 97 S.Ct. 2960, 53 L.Ed.2d 1084 (past advocacy of violence is probative of future dangerousness).

7. Appellant does assert that "the only purpose of the offer in this case was to prejudice the minds of the jury further[,]" that it "was nothing but prejudicial[,]" that "[t]he probative value here was merely to demonstrate that Appellant was a robbery waiting to happen," and that "[t]he state did not need to engage in this type of overkill in order to convince the jury that Appellant did, on occasion, commit a robbery using a lady's stocking as a disguise."

Because the record does include proof that appellant committed several other offenses, including aggravated robberies, while wearing a woman's stocking over his head, we are willing to interpret his "overkill" argument as an allegation that the testimony here in question was of little additional probative value. *See Morgan v. State,* 692 S.W.2d 877, 880, nn. 3 & 4 (Tex.Crim. App.1985). But relevant evidence need not be excluded merely because its probative value is slight, so long as it is not "substantially outweighed by the danger of unfair prejudice[.]" Tex.R.Cr.Evid., Rule 403. And it is clear that a defendant is not prejudiced *unfairly* just because evidence adds to the force of a legitimate inference. Therefore, because appellant does not claim that the jury might have been prone to use the testimony here in question for an impermissible purpose, we do not read his argument to allege any unfair prejudice beyond the incremental probative effect such testimony might legitimately have had on the material issues of this case.

of a matter at trial forfeits the right to complain of it on appeal. There are few exceptions to this rule, and we can divine none, to excuse Appellant's default in the present context. Here, a curative instruction could easily have dissipated any potential for prejudice visited upon Appellant. And, since the statement complained of occurred at *voir dire,* the Appellant could even have inquired of the prospective jurors whether such statement would affect their deliberations. To allow an exception to our default rules under the circumstances presented here could actually serve to discourage timely objections.

Accordingly, his fourth point of error is overruled.

V.

We have permitted both Appellant and his attorney to file supplemental briefs raising additional points of error. In his first Pro Se Supplemental Brief, Appellant contends that jury instructions given under Texas law at the penalty phase of his trial effectively misled jurors about their actual role in the assessment of punishment by intimating that a sentence of life imprisonment was not possible unless ten jurors agreed to answer one or more special punishment questions in the negative. Appellant argues that, because a persistently negative vote by even one juror is actually sufficient to ensure that the death penalty will not be imposed, prohibiting the parties and the trial judge from informing the jurors of this fact serves to pressure affirmative answers from them in violation of the Eighth Amendment to the United States Constitution.[8]

We take it to be past serious dispute that the features of Texas capital sentencing procedure about which Appellant here complains are uncommonly enigmatic. For instance, there is no such thing as a hung jury at the punishment phase of a Texas capital murder trial, in the sense that unresolved issues might later be litigated at a retrial of the same case. Failure of the jurors to agree automatically results in a sentence of life imprisonment. Art. 37.071(e), V.A.C.C.P. But the jurors don't know this. Indeed, the law prohibits the parties and the trial judge alike from telling them so. Art. 37.071(g), V.A.C.C.P. Instead, the instructions they receive from the court suggest that a sentence of life imprisonment is not possible unless ten jurors agree to answer one or more special punishment questions in the negative. Art. 37.071(d), V.A.C.C.P. Accordingly, if one assumes that jurors are told during *voir dire,* as they nearly always are, that a negative answer to one or more of the statutory punishment questions necessarily results in life imprisonment, it is conceivable that they will surmise later instructions requiring ten votes for a negative answer mean that a life sentence will not be imposed otherwise.

Certainly, reliability of the decision to impose death is reduced impermissibly when, among other reasons, jurors are misled into believing that their decision may be less momentous than it really is. *Caldwell v. Mississippi,* 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985). *See also Dugger v. Adams,* 489 U.S. 401, 109 S.Ct. 1211, 103 L.Ed.2d 435 (1989). But whatever the shortcomings of Texas capital sentencing procedure, we see nothing in the statutes here challenged by Appellant that operates to diminish the seriousness of juror deliberations or to suggest that ultimate responsibility for determining the propriety of a death sentence rests elsewhere. If anything, those statutes seem likely to stimulate in jurors a more serious approach to their task by encouraging them to reach agreement through continued deliberation rather than to abandon hope of consensus prematurely. It is only if they are "unable to answer" that the trial judge must impose sentence in the absence of a verdict.

Accordingly, inasmuch as Appellant argues that jurors should be informed about the consequence of their failure to agree

8. The Texas capital sentencing scheme has changed in a number of significant respects since Appellant's trial in 1987. Although most of these changes do not affect the analysis here, all references in the following discussion are to the pertinent statutes in effect at the time this case was tried.

because nonagreement is an optional verdict under our law, he is simply mistaken. Abstention is not a jury option. Rather, as in other cases, it is merely a consequence of the jury's inability to exercise its available options by reaching a verdict. It is not, nor would it be appropriate to suggest that it is, a verdict itself. *See Padgett v. State,* 717 S.W.2d 55, 58 (Tex.Crim.App. 1986).

More troubling, however, is the implication that our statutes, by requiring consensus, inhibit the free exercise by each juror of his individual judgment about the propriety of a death sentence. *See Mills v. Maryland,* 486 U.S. 367, 108 S.Ct. 1860, 100 L.Ed.2d 384 (1988). Again, however, it is not that jurors are somehow forbidden to cast or prevented from casting a negative vote unless nine other jurors agree to do so as well. Rather, it is the danger that jurors, unaware of the operation of the law, might mistakenly think a sentence other than death to be *impossible* unless ten of them agree that renders the procedure constitutionally suspect. But, because the jury instructions of which Appellant here complains are not reasonably susceptible of such an interpretation, we are satisfied that no juror would be misled by them into thinking that an affirmative answer should be given unless ten or more jurors agree to give a negative one. At worst the jury would simply not know the consequence of failing to agree. And, as we have already indicated, there is no apparent constitutional inhibition to concealing from jurors the consequence of their deliberations, so long as they are not misled into believing that ultimate responsibility for the verdict rests elsewhere. *Cf. Davis v. State,* 782 S.W.2d 211, 221–222 (Tex.Crim.App.1989), *cert. denied* 495 U.S. 940, 110 S.Ct. 2193, 109 L.Ed.2d 520.

The points raised in Appellant's Pro Se Supplemental Brief are overruled.

VI.

Appellant's remaining supplemental points contend in various ways that his conviction must be reversed for failure of the trial judge to authorize assessment of a sentence less than death on the basis of certain evidence offered in mitigation of punishment. *See Penry v. Lynaugh,* 492 U.S. 302, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989). But it is not always clear from the arguments presented by Appellant what the basis is for his thinking such evidence to be mitigating.

For example, in some respects Appellant seems only to claim that the allegedly mitigating evidence was relevant because it served to reduce the probability either of his having acted deliberately in the killing or of his being a danger to society in the future. To the extent this is what he means by mitigation, however, it was plainly not necessary that the trial judge explain the significance of such evidence to the jury. Relevancy is an empirical relationship which jurors may safely be presumed to appreciate without benefit of judicial instruction. *Quinones v. State,* 592 S.W.2d 933 (Tex.Crim.App.1980). Inasmuch as Appellant's evidence militated against an affirmative answer to one or more special issues, its mitigating value might readily have been given full effect by any sympathetic juror simply by the registration of an honestly negative response to one or more of the special punishment issues. Under such circumstances, no instructions of the kind at issue in *Penry* were necessary.

Nor was a definition of the term "deliberately" required to assure a fair understanding by the jury of Appellant's mitigating evidence. *Ex parte Baldree,* 810 S.W.2d 213, 217 (Tex.Crim.App.1991). His principal argument in this connection is that circumstances of the instant offense should be considered mitigating because they tend to show that the killing was really accidental. He also argues that concern for the physical safety of his victim in an earlier robbery makes it less probable that he would deliberately take the life of another person. But we are not persuaded that a rational juror who believed this version of the incident or of Appellant's past solicitous behavior would have been more likely to answer the first punishment issue in the negative if given a judicial instruc-

tion clearly distinguishing the terms "deliberately" and "intentionally." Whatever difference of meaning there may be between these two words, it is not illustrated by a case of purely accidental conduct or results. *See Morrow v. State,* 753 S.W.2d 372 (Tex.Crim.App.1988).

Accordingly, Appellant's similar argument with respect to the second special issue is equally flawed. He there claims that the mitigating significance of his drug addiction and alcoholism, his generally good character and splendid prospects for rehabilitation, together with his regard for the welfare of others, could not be fully understood by the jury without definitions of "probability" and "continuing threat to society." However, because he does not suggest how these terms should have been defined, we have some difficulty penetrating his argument. The gist of it seems to be that his evidence is reasonably susceptible of both an aggravating and a mitigating interpretation under the second special issue, lending it the celebrated "double-edged sword" effect made famous by *Penry. See Ex parte Goodman,* 816 S.W.2d 383, 386 (Tex.Crim.App.1991). But we do not see, nor are we able to believe, that any plausible definition of the terms in question would likely relieve the ambivalence of jurors charged with answering special issue number two. If the evidence cuts both ways, it is because the statutory punishment questions are sometimes difficult to answer, not because the relevance of such evidence is baffling without a judicial interpretation of ordinary English words.

Nevertheless, Appellant does seem to claim in other supplemental points that his evidence also had relevant mitigating value of a kind not compassed or contemplated at all by the special issues. If true, of course, some further means of soliciting the reasoned moral assent of jurors was an essential prerequisite to the imposition of a death sentence against him, as it is clear under *Penry* that the Eighth Amendment will not tolerate assessment of the death penalty by a sentencer who has been effectively precluded from considering relevant evidence proferred in mitigation of punishment. *Gribble v. State,* 808 S.W.2d 65 (Tex.Crim.App.1990). The evidence to which Appellant alludes in this connection is testimony of his mother describing the harsh conditions under which she and her children lived while Appellant was growing up. He points specifically to the brutality of his step-father, who made it a habit for many years viciously to beat his mother and sexually assault his sister. Although Appellant was not abused in this way himself, he was evidently expelled from the household on more than one occasion and made to fend for himself while still a teenager. These experiences, he claims, have a tendency to mitigate his fault for crimes later committed as an adult.

While we appreciate the evident social and moral poverty of Appellant's formative years, we are not persuaded that any substantial portion of society shares a belief in the reduced culpability of persons disadvantaged in the way he describes. Our recent efforts to implement the Supreme Court's holding in *Penry* have led us to adopt a view of mitigation which is considerably less expansive than that urged by Appellant in this case, and by other similarly situated claimants. As a general matter, we have taken the view that evidence does not have significant mitigating potential of the kind contemplated by *Penry* if, for example, it has "relevancy directly within the scope of the second special punishment issue and [is] truly mitigating." *Black v. State,* 816 S.W.2d 350, 365 (Tex.Crim.App. 1991). *See also Boyd v. State,* 811 S.W.2d 105, 111–112 (Tex.Crim.App.1991); *Ex parte Ellis,* 810 S.W.2d 208 (Tex.Crim.App. 1991). Much of Appellant's evidence arguably meets this standard. But of greater importance, such evidence does not implicate additional standards of extenuation beyond those codified in this State's special statutory punishment questions. Sympathetic as we may be to his plight during childhood and adolescence, we do not think that Appellant might rationally be found less morally culpable for his adult behavior on this basis, according to contemporary moral values shared by a significant segment of our society. *See Lewis v. State,* 815 S.W.2d 560, 567 (Tex.Crim.App.1991).

The points raised in Appellant's Supplemental Brief and Second Pro Se Supplemental Brief are, therefore, overruled.

Finding no basis in points raised by Appellant to disturb the judgment of the trial court, we affirm the conviction and sentence of death in this cause.

BAIRD, J., for the reasons expressed in *Ex parte Bower,* 823 S.W.2d 284, 287 (Tex. Crim.App.1992) (Baird, J., concurring), concurs only in the judgment of the Court.

CLINTON, J., disagreeing, e.g., with treatment of claims in Parts V and VI, concurs only in the judgment of the Court.

MALONEY, J. joins Parts I through V, inclusive, of the Court's opinion, disagrees with treatment of Part VI, and concurs in the judgment of the Court.

OVERSTREET, J., concurs only in the judgment of the Court.