PD-1339-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 10/12/2015 9:22:18 PM
Accepted 10/14/2015 5:04:35 PM
ABEL ACOSTA
CLERK

No. _____

# IN THE
# COURT OF CRIMINAL APPEALS

# RONNY JOE STANDIFER

**Petitioner and Appellant**

## v.

# THE STATE OF TEXAS

**Appellee**

# APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

Cause Number 2013-122-C1 in the 19th District Court of McLennan County
Cause Number 10-15-00038-CR in the Tenth Court of Appeals

FILED IN
COURT OF CRIMINAL APPEALS

October 14, 2015

ABEL ACOSTA, CLERK

Filed by Patrick Brady
State Bar Number 00783709
North Valley Mills Drive, Suite 500
Waco, Texas 76710
Phone: 254-772-8022
Fax: 254-772-9297
e-mail: pbrady@slmpc.com

**ORAL ARGUMENT IS REQUESTED**

# PETITION FOR DISCRETIONARY REVIEW

# TO THE HONORABLE COURT OF CRIMINAL APPEALS:

## I.  IDENTITY OF JUDGE, PARTIES, AND COUNSEL

**Petitioner and Appellant:**       **RONNY JOE STANDIFER**

**Attorney for Petitioner:**       **PATRICK OWEN BRADY**
**On Appeal**                      510 North Valley Mills Drive, Suite 500
                                   Waco, Texas 76710
                                   254-772-8022
                                   Fax:  254-772-9297
                                   e-mail:  pbrady@slmpc.com

**Attorney for Petitioner:**       **DENTON LESSMAN**
**At Trial**                       100 North sixth Street, Suite 707
                                   Waco, Texas 76701
                                   254-776-4544
                                   Fax:  254-776-4551
                                   e-mail:  dlessmanatty@aol.com

**Appellee:**  **THE STATE OF TEXAS**

**Attorney for the State:**  **ABEL REYNA**
**On Appeal**  **STERLING HARMON**
Criminal District Attorney
219 North Sixth Street, Suite 200
Waco, Texas 76701
254-757-5084
Fax: 254-757-5021
e-mail: sterling.harmon@co.mclennan.tx.us

**Attorney for the State:**  **ROBERT MOODY**
**At Trial**  **AMANDA DILLON**
Criminal District Attorney
219 North Sixth Street, Suite 200
Waco, Texas 76701
254-757-5084
Fax: 254-757-5021

**Trial Court Judge:**  **THE HONORABLE MATT JOHNSON**

## II.  TABLE OF CONTENTS

I.       IDENTITY OF JUDGE, PARTIES, AND COUNSEL . . . . . . . . . . . . i

II.      TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .iii

III.     INDEX OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . .iv

IV.     REGARDING ORAL ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . v

V.      STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . v

VI.     STATEMENT OF PROCEDURAL HISTORY . . . . . . . . . . . . . . . . v

VII.    GROUNDS FOR REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1

VIII.   ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1

IX.     PRAYER FOR RELIEF . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .10

X.      CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . 10

XI.     CERTIFICATE REGARDING FONT AND WORD LIMIT . . . . . .11

XII.    APPENDIX

        (Pages from reporter's record and Memorandum Opinion)

        . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Attached at the Back

# III. INDEX OF AUTHORITIES

**Cases**

Allridge v. State
      850 S.W.2d 471 (Tex.Crim.App. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . .6

Barajas v. State
      93 S.W.3d 36 (Tex.Crim.App.2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Draughon v. State
      831 S.W.2d 331 (Tex.Crim.App. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . 1, 7

Samaripas v. State
      No. 13-11-00442-CR, 2015 WL 1957244 (Tex.App., Apr. 30, 2015) . . . . . 8

Sells v. State
      121 S.W.3d 748 (Tex.Crim.App. 2003) . . . . . . . . . . . . . . . . . . . . . . . . .6, 7

Standefer v. State
      59 S.W.3d 177 (Tex.Crim.App. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . .6

**Rules**

Tex. R. App. Proc. 33.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 2

Tex. R. App. Proc. 66.3 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

# IV. REGARDING ORAL ARGUMENT

Counsel believes oral argument would aid the Court.

# V. STATEMENT OF THE CASE

The appellant, Ronny Joe Standifer, was indicted for Aggravated Assault –

Serious Bodily Injury, a second degree felony which was enhanced to first degree

punishment with an allegation of a prior felony conviction. (1 C.R. 6)

At trial, a jury found Ronny guilty (1 C.R. 139) and assessed his sentence at

life in prison with a $10,000 fine (1 C.R.148).

Notice of appeal was filed February 5, 2015.

# VI. STATEMENT OF PROCEDURAL HISTORY

On appeal, the sole issue presented to the Tenth Court of Appeals was stated

as follows:

"It was reversible error for the judge to allow the prosecution to ask
the voir dire panel what evidence the panel wanted at trial when the
alleged victim would not testify." (Appellant's Brief)

On September 10, 2015, the Tenth Court of Appeals held error, if any, was

not preserved (Opinion at page 2 in the Appendix to this Petition), even though

defense counsel made an objection (2 R.R. 79) to the voir dire questioning.

No motion for rehearing was attempted.

## VII.  GROUND FOR REVIEW

### Ground No. 1

The Tenth Court of Appeals erred in deciding that a complaint had not been preserved when defense counsel objected, "This is getting into the specific facts of the case potentially.  Improper commitment." at the beginning of a voir dire colloquy regarding what proof is desired or expected by the potential jurors.

## VIII.  ARGUMENT

### A.     Reasons for Review  (Rule 66.3)

The Tenth Court of Appeals has decided an important question of state law in a way that conflicts with the applicable decisions of the Court of Criminal Appeals.  Specifically, the Tenth Court of Appeals raised the burden for preserving error beyond what is required by Rule 33.1, Texas Rules of Appellate Procedure, assuming Rule 33.1 can be interpreted by Draughon v. State, 831 S.W.2d 331 (Tex.Crim.App. 1992).

In the alternative, the Tenth Court of Appeals has decided an important question of state law that has not been, but should be, settled by the Court of Criminal Appeals.  Specifically, the Tenth Court of Appeals has effectively held

that Rule 33.1 requires every single voir dire question to be followed by an objection in order for error to be preserved.

Further, the Tenth Court of Appeals has sanctioned a departure from the accepted and usual course of judicial proceedings by the lower court which is so great that it requires discretionary review, and therefore the Tenth Court of Appeals has itself so far departed from the accepted and usual course.

## B.    The Record

### The Alleged Assault

The alleged victim of the assault died prior to trial from unrelated health problems.  (3 R.R. 8)  Therefore, the prosecution's case was largely circumstantial.

On November 15, 2012, peace officers responded to a 911 call and found a naked female lying on the floor of her home unconscious but holding a telephone. (3 R.R. 48)  They also found blood and clumps of hair in other rooms of the residence.  (3 R.R. 48, 51, 95 - 99)  At trial, a doctor described the woman's injuries as follows:

> -- One ear was 90% avulsed (hanging on by 10%)  (3 R.R. 133)
> -- "Significant trauma" to the genital area  (3 R.R. 136)
> -- Heart stopped, requiring CPR  (3 R.R. 138)
> -- Broken ribs  (3 R.R. 141)
> -- "Severe anoxic brain injury"  (3 R.R. 145)

-- Spinous fracture  (3 R.R. 146)

-- Brain bleeding  (3 R.R. 147)

The injuries were, according to the doctor, consistent with being hit and kicked (3 R.R. 152), and this opinion was bolstered by other (3 R.R. 95 – 99, 104 and 216).)

Ronny Joe Standifer became a suspect in the case (3 R.R. 54 and 186), and a detective contacted Ronny who freely admitted making the original 911 call.  (3 R.R. 187 – 190)  Eventually, Mr. Standifer gave statements about what happened to the woman.  (3 R.R. 192 – 196 and 202, State's Exhibit 94)

At trial, Mr. Standifer testified.  He explained to the jury that he arrived at the woman's house around 10:00 p.m. (3 R.R. 237) and found the woman sitting on her couch drinking (3 R.R. 238).  The medical records showed that the woman had a blood alcohol level of .2 grams per deciliter (3 R.R. 152) which is legally intoxicated (3 R.R. 219).  She acted intoxicated and eventually fell asleep (3 R.R. 238 – 241) and Ronny decided to move out of the woman's residence because "I said, man, I just can't take this no more" (3 R.R. 241).  He began packing his belongings which eventually woke the woman. (3 R.R. 241 – 242)  She tried to stop him from leaving.  (3 R.R. 242 – 244)  She tried to physically stop him which resulted in her falling multiple times.  (3 R.R. 244 – 246)  At one point, the woman fell on her dog which then attacked or tried to attack them both.  (3 R.R. 247 and State's Ex. 94)  Also, during various times in the struggles that night, Mr. Standifer

fell on top of the woman, but it was never intentional. (3 R.R. 252) He did not cause the terrible injuries reflected in the photos (3 R.R. 251 – 252) and did not cause any intentional injuries (3 R.R. 232 and 252) and not knowingly or recklessly (3 R.R. 257). In fact, Mr. Standifer protected her from the attacking dog. (3 R.R. 251 and 253) He left the residence after calling 911 because he was on parole and in violation of his parole by being at that location. (3 R.R. 233)

With regard to injuries possibly being caused by a dog, prosecution witnesses testified that many of the injuries could not be caused by a dog (3 R.R. 59, 60 – 61, 81and 82, 143, 151 and 178 – 179), that the dog was not aggressive (3 R.R. 46, 67, 116), and that the dog did not have blood on its muzzle (3 R.R. 117) .

With regard to a suggestion that the injuries were caused by a fall, witnesses testified that falls would not cause injuries so extensive. (3 R.R. 81 – 82, 84 – 85, 143 – 144, 150 and 178 – 179)

CPR was specifically excluded as a possible cause of at least one rib fracture. (3 R.R. 144 – 145)


**Voir Dire**

During jury selection, the prosecution began preparing the jury for the fact that the alleged victim would not testify. The prosecution asked the voir dire panel

about "the one witness rule" (2 R.R. 68 – 78) and then asked the panel to speculate about reasons the "victim" would not testify (2 R.R. 78 – 79) and finally asked:

> "How would you prove something without the victim – the person that was actually there who was injured?" (2 R.R. 79)

The defense objected that the question called for an improper commitment, and the court overruled the objection. (2 R.R. 79) Immediately, the prosecutor restated the question as follows:

> "How do you prove something like if you don't have a victim?"

> and

> "What would you want to see?" (2 R.R. 79)

These questions elicited several responses from the potential jurors including the following:

> "Whatever you present to the jurors." (2 R.R. 80)

> "The doctor." (2 R.R. 80)

> "DNA." (2 R.R. 80)

> "Medical." (2 R.R. 80)

> "Victim's family." (2 R.R. 80)

> "What about pictures?" (2 R.R. 81)

The prosecution also suggested examples of evidence which might be offered instead of eyewitness testimony: "Prior instances" (prior bad acts) and "injuries on the other side" (i.e., injuries on Mr. Standifer). (2 R.R. 81)

## C. The Law

"The trial court has broad discretion over the process of selecting a jury." Sells v. State, 121 S.W.3d 748, 755 (Tex.Crim.App. 2003); Barajas v. State, 93 S.W.3d 36, 38 (Tex.Crim.App. 2002). "Thus, we leave to the trial court's discretion the propriety of a particular question and will not disturb the trial court's decision absent an abuse of discretion. A trial court abuses its discretion when it prohibits a proper question about a proper area of inquiry. A question is proper if it seeks to discover a juror's views on an issue applicable to the case." Sells, at 755-56.

An attorney cannot attempt to bind or commit a prospective juror to a verdict based on a hypothetical set of facts. Sells, at 755-56; Allridge v. State, 850 S.W.2d 471, 480 (Tex.Crim.App. 1991). An open-ended question can be a commitment question, and therefore improper, if the question asks the prospective juror to set the hypothetical parameters for juror's decision-making. Standefer v. State, 59 S.W.3d 177, 180 (Tex.Crim.App. 2001)

In addition, a trial judge may prohibit as improper a voir dire question that is so vague or broad in nature as to constitute a global fishing expedition. <u>Sells</u>, at 756.

In order to preserve error, a party must object to an improper voir dire question. <u>Draughon v. State</u>, 831 S.W.2d 331, footnote 1 (Tex.Crim.App. 1992). An objection is sufficient if it apprises the trial judge of the party's complaint, and error is preserved if the judge's adverse ruling is authoritative enough to obviate the necessity for further objection. <u>Draughon</u>, at footnote 1.

**D.   Analysis**

In Mr. Standifer's case, the purpose in the State's voir dire was primarily to

(1)  commit jurors to relying on certain kinds of evidence, for example medical records and medical testimony, prior bad acts, the testimony of relatives of the alleged victim and photos; and

(2) commit jurors to not requiring eyewitness testimony.

A secondary effect of the questions was to make all of the panel members view the case from the prosecutor's point of view – the line of questioning started "How do you prove . . ." and thereby put the burden of proof on the jurors.

The overall effect of the questioning was to prime the jury for the evidence so the jurors would not question the nature or manner of proof offered during trial.

The questioning was improper because it asked the prospective jurors to set the parameters for their decision-making. The alleged victim was not going to testify – she had died before voir dire began – so the issue was simply what else did the jury need before answering "guilty." It is analogous to the line of questioning in <u>Samaripas v. State</u>, No. 13-11-00442-CR, 2015 WL 1957244, at 1 (Tex. App. Apr. 30, 2015) when the defense tried to ask, "What type of evidence would you expect the State of Texas to bring to you in order to convince you that somebody committed an offense beyond a reasonable doubt?" It was improper in <u>Samaripas</u>, and it is improper here.

This was largely a case of circumstantial evidence, and Mr. Standifer was entitled to a jury that would potentially require the prosecution to present an eyewitness to the alleged "assault." The jury was unfairly committed to considering only the prosecution's side – the medical records, the photos, the prior bad acts, and "whatever" was offered instead of eyewitness testimony.

Mr. Standifer's attorney clearly objected to the inquiry about what evidence the jury wanted if the alleged victim did not testify. What followed was a conversation about what circumstantial evidence might be used to prove a case

instead of having the victim's testimony. No reasonable person could think the defense had no objection to the conversation.

## C. Conclusion

Defense counsel's objection clearly apprised the judge of the complaint, and the judge's ruling was clear enough that (1) a reasonable person could realize further objections would be overruled and therefore unnecessarily repetitive, and (2) a reasonable person would understand that the defense objected to the subject of the conversation with the jury, not just the initial question.

The complaint was preserved for appeal, and the court of appeals should have considered the complaint on the merits.

# IX. PRAYER FOR RELIEF

Appellant prays that the Court grant this Petition for Discretionary Review, order a brief on the merits, and then reverse the holding of the court of appeals.

Respectfully submitted,

_____/S/____ Patrick Brady
**Patrick Brady**
State Bar No. 00783709
510 North Valley Mills Drive, Suite 500
Waco, Texas 76710
254-772-8022
Fax: 254-772-9297
e-mail: pbrady@slmpc.com

# X. CERTIFICATE OF SERVICE

This is to certify that on October 12, 2015, a true and correct copy of the above has this day been delivered to the McLennan County District Attorney's Office, 219 North 6th Street, Waco, Texas 76701, by electronic service at the e-mail addresses for the State Prosecuting Attorney and the McLennan County District Attorney.

_____S/____ Patrick Brady
**Patrick Brady**

## XI. CERTIFICATE REGARDING FONT AND WORD LIMIT

In accordance with Rule 9.4, the undersigned attorney certifies as follows:

1.  This petition complies with the type-volume limitation of TEX. R. APP. P. 9.4(i) because this petition contains 1,734 words, excluding the parts of the petition exempted by TEX. R. APP. P. 9.4(i)(1), or,

2.  This petition complies with the typeface requirements and the type style requirements of TEX. R. APP. P. 9.4(e) because this petition has been produced on a computer in conventional typeface using Microsoft Word, Times New Roman font, 14 point in the body of the petition and 12 point in the footnotes.

/S/    Patrick Brady
**Patrick Brady**

# XII.  APPENDIX

The appendix is following and attached.

APPENDIX TO PETITION FOR DISCRETIONARY REVIEW

SELECTED PAGES FROM THE REPORTER'S RECORD

VOLUME 2, PAGES 68 - 81

MS. DILLON: So where did we stop over here? 26, just because you might hear from a doctor, you gonna believe everything they say just 'cause they're a doctor?

PROSPECTIVE JUROR: No.

MS. DILLON: 27, just because you might hear from a police officer, you gonna believe everything a police officer says?

PROSPECTIVE JUROR: No.

MS. DILLON: Some people make mistakes, right?

PROSPECTIVE JUROR: That's right.

MS. DILLON: Is there anyone that's -- that kind of is the opposite of that? Said, you know what, I had a bad experience in my -- my past. You bring a doctor in here, I'm gonna hate them. I'm not gonna believe anything they say just 'cause they're a doctor. Anybody feel that way?

Anybody -- you bring a cop in here -- just because they're a cop, I'm gonna hate them. I'm not gonna believe anything they say. Anybody feel that way?

All right. The law also says -- and some people struggle with this. If you look at those elements again, the law says as long as I prove as the State every single one of those elements, it's like

touching a base in baseball. I get every base. As along as I prove every single one of those elements beyond a reasonable doubt, I could do it all with one witness.

Let's say I call one person. They take the stand and you believe everything they say. No doubt in your mind, I believe them. And they hit every element and you believe those elements beyond a reasonable doubt. The law says I can do it all with one witness.

Where did we stop over here?

PROSPECTIVE JUROR: I answered just a minute ago.

MS. DILLON: Okay. You're just trying to get out from under me.

PROSPECTIVE JUROR: No, no.

(Laughter)

MS. DILLON: We'll go ahead and skip you.

28, how do you feel about that? As long as I hit every one of those elements, I could do it all with one witness. It's called the one-witness rule.

PROSPECTIVE JUROR: And that really is the rule?

MS. DILLON: That's a rule. I'm not saying that's gonna happen but it's possible that it could all be proven with one witness. How do you feel about that?

PROSPECTIVE JUROR: I guess I would feel pretty comfortable with that. I might like to hear more, but if that's the law, and I listened to the whole story, whatever was the story, and I had to make a decision, and the facts were proved, so...

MS. DILLON: Sure. And let me give you an example. Let's say, you know, we leave today and you didn't get picked and you're so sad. And we go out into the parking lot and you're a little late and everybody else is gone. And you're getting in your car, and I walk up to you and I got a gun, and I point it at you, and I say give me -- you know -- I don't know. I don't even know if they give you money for being a juror. I don't know. Let's say it's $5. I say give me your $5. And you're like, I just saw you, you're the attorney, and I say, no, give me your five bucks. And so I take your five bucks and I run away.

And you call the police, and the police get out there and you're like, you know what, I know exactly what it -- her name is Amanda Dillon. She's wearing this suit. She works in this courtroom. I tell you her hair color, her eyes, everything. And they're like, that's great, ma'am. Where's your other witnesses? And you say, well, I don't have any other witnesses. It was the parking lot. I was alone. And the officer says,

you know what, sorry, I got to have somebody else.  Is that fair?

PROSPECTIVE JUROR:  No.

MS. DILLON:  Does that feel like justice?

PROSPECTIVE JUROR:  No.

MS. DILLON:  Juror number 29.  Who's the only one that controls what time of day an offense happens?  Who's the only one that can control that?  The person that did it, right?

PROSPECTIVE JUROR:  I guess you.

MS. DILLON:  Oh, yeah, I'm the person that did it, right.

PROSPECTIVE JUROR:  No, I mean --

MS. DILLON:  How would I control what time the offense happened?

PROSPECTIVE JUROR:  No, I don't mean you.

MS. DILLON:  Me, the bad guy with the gun?

PROSPECTIVE JUROR:  Yes.

MS. DILLON:  Okay.

The person that did it is the only one that can control when an offense happens, right?

PROSPECTIVE JUROR:  Yes.

MS. DILLON:  Number 30, who is the only person that can control where an offense happens?

PROSPECTIVE JUROR:  The person who does it.

MS. DILLON: Right.

How many witnesses there are. 31, who's the only person that can control how many witnesses there are to an offense?

PROSPECTIVE JUROR: No one.

MS. DILLON: Well, let's say they take someone to a secluded place. Who's the only one that can control that?

PROSPECTIVE JUROR: The perpetrator.

MS. DILLON: Sure. Yeah. The Defendant, right?

Is it fair if they're really good at it? They take you some place where there's no witnesses? That's not -- that's not fair, is it?

So does everybody understand this one-witness rule? Is there anyone that feels, you know what, I understand. I completely understand you might not have nothing. You might have no videos. You know, no DNA. Nothing but one witness, but to me that's not enough. I've got to have more than one.

And juror number -- flowered shirt, I'm sorry.

PROSPECTIVE JUROR: Me?

MS. DILLON: You're nodding -- 14. Sorry. Me? What?

(Laughter)

I mean, you're nodding, so does that bother you?

PROSPECTIVE JUROR:  Somewhat.

MS. DILLON:  Sure.

'Cause, again, we have that, you know, we have to listen to both sides of the story.  But do you feel like you could follow that rule or is that something that's going to be in the back of your mind?

PROSPECTIVE JUROR:  It would be in the back of my mind.

PROSPECTIVE JUROR:  Yeah.  'Cause sometimes they'll --

MS. DILLON:  31.

PROSPECTIVE JUROR:  Sometimes they'll prove years later that that person was lying.

MS. DILLON:  Sure.

PROSPECTIVE JUROR:  And they were convicted for nothing.

MS. DILLON:  Sure.  We hear stories about that, right?

PROSPECTIVE JUROR:  I think that's scary.

MS. DILLON:  Sure.

And no one's gonna say, again, that this is not a hard process.  But the law says that if you

believe every one of those elements, and you believe that I proved them as the State beyond a reasonable doubt, I can do it all with one witness.

Is there anyone that still feels like I just can't get there, Amanda. I can't do it.

PROSPECTIVE JUROR: I have a question.

MS. DILLON: Sure.

What was your number again? I'm sorry, 28.

PROSPECTIVE JUROR: 28.

Is the witness -- can it be the victim too?

MS. DILLON: Could be anybody, you know? Could be anybody.

PROSPECTIVE JUROR: So your one witness could be the victim?

MS. DILLON: Could be, but you don't know at this point.

The law just says you have to be able to follow the law. And again, if the law says, you know, as long as I put one witness on and I prove every single one of those, that's enough.

Is there anybody that, again, feels like I can't? That's a problem? 31?

PROSPECTIVE JUROR: The whole case could rest on that one person?

MS. DILLON: It could. Under the law it

could.

You're making a face. And a lot of people struggle with this and I understand why.

PROSPECTIVE JUROR: It can form a crowd and say, hey, could everybody watch this. It could be hard I think. It better be a good witness.

MS. DILLON: And you have to believe them beyond a reasonable doubt.

Do you feel like you could follow the law and say if I believe them beyond a reasonable doubt, I will convict if you prove with one witness?

PROSPECTIVE JUROR: Yeah, I guess so.

MS. DILLON: I guess? You got to be faithful to me.

PROSPECTIVE JUROR: I'm faithful to you.

MS. DILLON: So, yes?

(Laughter)

I'll let you leave then if you think you could follow the law.

PROSPECTIVE JUROR: I would give it my very best shot.

MS. DILLON: Oh, you're doing it again.

PROSPECTIVE JUROR: Okay. Yes, I guess.

MS. DILLON: Guess. You're doing it to me again. You're killing me. I know this is not a

question you thought about and --

PROSPECTIVE JUROR: I just never thought about just one witness.

MS. DILLON: But again, you have to believe them beyond a reasonable doubt. You believe them?

PROSPECTIVE JUROR: If you prove it beyond a reasonable doubt, yes.

MS. DILLON: Okay.

Anyone -- anybody else? 21.

PROSPECTIVE JUROR: My only concern would be the credibility of the witness.

MS. DILLON: Sure.

The jurors are the judge of credibility. You're the ones that decide if someone is credible or not.

But in the question I give, you do believe them. You think they are credible. You said I believe what they say and they hit every element. I believe every element was proved beyond a reasonable doubt. Do you think you could do that with one witness?

PROSPECTIVE JUROR: I don't know if I could because I would have -- I would need to know more about the witness. I need to find out, you know, what their background was like. What --

THE COURT: Ladies and gentlemen, let me

jump in here. I think it's easy to miss the point here. You're gonna take an oath that if you believe the State has proved their case beyond a reasonable doubt, you would return a verdict of guilty. If you don't think the State has proved their case, you need to return a verdict of not guilty.

But the premise of Ms. Dillon's question here is that you believe the witness. You believe them beyond a reasonable doubt. You think they proved their case. So, therefore, what would your verdict have to be?

PROSPECTIVE JURORS: Guilty.

THE COURT: Guilty, right, if you think the State has proved their case. Now you may listen to one witness and you may not believe them. You may think they're not credible. If you don't believe that witness, then you need to find the Defendant not guilty. But if -- the premise of her question is, you believe them. You think they proved their case say, so, therefore, could you find the Defendant guilty if there's only one witness?

I mean, your verdict would have to be guilty if you're gonna follow the law. But if you think that because the State only had one witness, even though they proved their case that's not enough for me. That's

their question.

PROSPECTIVE JUROR:  Thank you.

MS. DILLON:  Anybody?  And I think -- I'm sorry, 21?

PROSPECTIVE JUROR:  That made it clear.

MS. DILLON:  Okay.  Does anybody feel differently?  I got to have another witness.  No matter what they say I got to have another witness.

Where did I stop over here?  32, I think we've talked.  I'm trying to hit everybody.

33?  Sorry.  Jumping ahead, thought you were safe with 32.

What might be a reason that you don't hear from the victim?

PROSPECTIVE JUROR:  The same reason that you may not hear from the Defendant.  I mean, they could be intimidated to the -- scared, emotional.

MS. DILLON:  Sure.  29?

PROSPECTIVE JUROR:  Or they can't.  They simply can't.

MS. DILLON:  Because why?

PROSPECTIVE JUROR:  Deceased.

MS. DILLON:  Sure.  One of the examples was that it can cause serious bodily -- oh, I'm sorry.  Can cause death or does cause death.

PROSPECTIVE JUROR: What if they're still hospitalized?

MS. DILLON: Sure, coma. 41. Coma. Let's say that they were injured so badly they're in a coma and the doctor says they're never coming out. Is it fair that, you know, the perpetrator wins? He beats them so badly that they're never gonna come out. Should they not be charged? No.

So is there anyone that feels like, if I don't hear from the victim, then I can't find somebody guilty? Right? I mean, there is that extra hurdle that the State's taken. Like, I've got to prove without a victim. How would you prove something without the victim -- the person that was actually there who was injured?

MR. LESSMAN: Judge, I'm gonna object. This is getting into the specific facts of this case potentially. Improper commitment.

THE COURT: Overruled.

MS. DILLON: How do you prove something like if you don't have a victim?

PROSPECTIVE JUROR: Evidence.

MS. DILLON: What would you want to see? Somebody said something.

PROSPECTIVE JUROR: Evidence.

MS. DILLON: I'm sorry, what's your number?

PROSPECTIVE JUROR: 37.

MS. DILLON: 37.

Evidence. What kind of evidence?

PROSPECTIVE JUROR: Whatever you present to the jurors.

MS. DILLON: Sure.

But what specifically? 12.

PROSPECTIVE JUROR: Eyewitness.

MS. DILLON: Sure. A witness. Say, if a witness was there. What else would you want to see? Medical.

41 said medical.

PROSPECTIVE JUROR: The doctor.

MS. DILLON: Doctors to talk about injury. Anything else? Can you think of? How would you prove that agg assault happens if I don't have a victim?

PROSPECTIVE JUROR: DNA.

MS. DILLON: DNA, sure.

A little bit of that good old CSI type stuff. Anybody else? Law enforcement.

PROSPECTIVE JUROR: Victim's family.

MS. DILLON: Who said that?

PROSPECTIVE JUROR: Me.

MS. DILLON: 34.

Victim's family. Talk about maybe some prior instances or something like that. Anybody think of anything else?

PROSPECTIVE JUROR: What about pictures?

MS. DILLON: Picture.

PROSPECTIVE JUROR: Weapons.

MS. DILLON: Weapons. You know, the injuries on the other side maybe. Stuff like that. Everything comes together to tell the story, right? Even if you don't have the victim, the person that was injured if they're in a coma, right?

It's the totality of the circumstances can come together to prove the agg assaults. Everybody understand that?

So anyone that says I got to have a victim? He gets extra points because they're not here? I didn't think so.

Who said DNA? Someone over here said DNA.

PROSPECTIVE JUROR: I did.

MS. DILLON: 14.

(Laughter)

You act like this is hard.

Okay. Have you ever seen, you know, the CSI shows and stuff like that?

PROSPECTIVE JUROR: Of course.

**APPENDIX TO PETITION FOR DISCRETIONARY REVIEW**


**MEMORANDUM OPINION FROM THE TENTH COURT OF APPEALS**



# IN THE
# TENTH COURT OF APPEALS

### No. 10-15-00038-CR

RONNY JOE STANDIFER,

Appellant

v.

THE STATE OF TEXAS,

Appellee

### From the 19th District Court
### McLennan County, Texas
### Trial Court No. 2013-122-C1

## MEMORANDUM OPINION

Ronny Joe Standifer was convicted of aggravated assault causing serious bodily injury which was enhanced to a first degree felony because of a prior felony conviction. *See* TEX. PENAL CODE ANN. 22.02 (West 2011). He was sentenced to life in prison. Because error, if any, has not been preserved, we affirm the trial court's judgment.

The victim of the crime died of cancer before trial.

Standifer contends the State was allowed to ask improper commitment questions. In his sole issue, Standifer complains that the trial court erred in permitting

"the prosecution to ask the voir dire panel what evidence the panel wanted at trial when the alleged victim would not testify."

During voir dire, the State asked, "[h]ow would you prove something without the victim – the person that was actually there who was injured?" Standifer objected to the question as an improper commitment question. That objection was overruled. The State did not, however, press the question with the voir dire panel and obtain an answer. Rather, the State moved on and when the State rephrased the question, two questions later, and asked, "What [type of evidence] would you want to see," Standifer did not object.

A colloquy followed that ended with the State and prospective jurors discussing other types of evidence to prove the crime other than testimony of the victim. But no objections were made after the State rephrased the question and moved on to the discussion. Accordingly, error, if any, is not preserved. TEX. R. APP. P. 33.1.

Standifer's sole issue is overruled. The trial court's judgment is affirmed.


TOM GRAY
Chief Justice

Before Chief Justice Gray,
    Justice Davis, and
    Justice Scoggins
Affirmed
Opinion delivered and filed September 10, 2015
Do not publish
[CRPM]

